HOPKINS, J. T. C.
This is an appeal from an assessment of sales and use tax pursuant to N.J.S.A. 54:32B -1 et seq., which resulted from an audit covering the period January 1, 1976 to December 31, 1978. The assessment was in the amount of $23,831.65, together with penalty of $1,191.58 and interest of $8,400.66 for a total of $33,423.89. It was based upon alleged sales involving the repair, maintenance and servicing of autos and construction equipment (machinery) owned and used by Bellezza Co., Inc., a corporation having the same stockholders and officers as plaintiff.
Plaintiff contests the imposition of the tax on the basis that the maintenance and servicing of the machinery was an exempt sale of services because Bellezza was exclusively engaged in performing road or paving construction for exempt organizations in accordance with N.J.S.A. 54:32B--8(w) and N.J.A.C. 18:24 5.5(a). Alternatively, plaintiff argues that since it only performed services for Bellezza and since that corporation had the same shareholders and officers, in the same proportion, as plaintiff, they should be treated either as one entity or plaintiff as the agent for Bellezza.
The facts, which have been fully stipulated, are so found by the court. Plaintiff was incorporated as a New Jersey corpora *544 tion on May 27,1963 and during the period here involved had its principal place of business at Two Fish House Road, South Kearny, New Jersey. Its certificate of incorporation showed that its objectives were varied, and they included engaging in the business of renting construction equipment. Its sister corporation, Bellezza Company, Inc., was previously incorporated on February 4, 1948 and was also located at the foregoing address. Its certificate of incorporation showed its objectives to be building and contracting for construction work. The capital stock of both entities was owned, in the same proportions, by the same individuals, and both corporations had the same officers and directors. During the period here involved both corporations filed separate annual reports with the New Jersey Secretary of State’s office, kept and maintained separate accounting records and financial reports and filed separate corporation tax returns.
Bellezza was a contractor, as defined by N.J.A.C. 18:24-5.2, and dealt exclusively in road construction and other paving construction. It owned and leased heavy construction equipment. Plaintiff’s only activity, pursuant to an oral agreement, was to provide maintenance and repair services to Bellezza’s machinery. During the years here involved Bellezza’s work for exempt organizations constituted the following percentage of its total activities:
1976 ........................... 99.81%
1977 ........................... 99.32%
1978 ........................... 99.97%
Such work constituted improvements to real estate.
By a certificate of merger dated November 21, 1980 and effective as of December 31, 1980, plaintiff was merged into Bellezza. At that time Bellezza had become plaintiff’s sole shareholder.
The taxes here involved were computed on the basis of those payments which Bellezza made to plaintiff for repair and maintenance of Bellezza’s machinery.
The New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq., provides for a tax on retail sales, storage and use of personal property and on the sales of certain services within *545 New Jersey. Specifically, N.J.S.A. 54:32B-3(b) imposes a tax upon
... (2) maintaining, servicing, repairing tangible personal property not held for sale in the regular course of business....
N.J.S.A. 54:32B- 8(w) (now designated as N.J.S.A. 54:32B-8.22 without material change) exempts
... (w) Sales made to contractors, subcontractors or repairmen of materials, supplies or services for exclusive use in erecting structures, or building on, or otherwise improving, altering or repairing real property of organizations described in subsections (a) and (b) of section 9 of this act, provided any person seeking to qualify for this exemption shall do so pursuant to such rules and regulations and upon such forms as shall be prescribed by the Director; ....
On July 29, 1969 the Division of Taxation filed with the Secretary of State’s office a list of Sales Tax rules regarding the building and construction trades. These rules are now codified in the Administrative Code as N.J.A.C. 18:24-5.1 et seq. N.J. A.C. 18:24-5.5(a) reads as follows:
Taxable services purchased by a contractor are subject to tax unless such services are performed for a purchasing contractor exclusively for use in fulfilling a contract with an exempt organization.
Plaintiff’s position is that N.J.S.A. 54:32B-8(w) as well as N.J.A.C. 18:24-5.5(a) should be construed to provide that the services to Bellezza’s machinery were “services for exclusive use in erecting structures, or building on, or otherwise improving, altering or repairing real property of” exempt organizations or, as provided by the regulations, the services were “exclusively for use in fulfilling a contract with an exempt organization.” In approaching the question of what the Legislature meant in granting the claimed exemption, we start with the rule that statutes granting exemption from taxation “are most strongly construed against those claiming exemption.” Bloomfield v. Academy of Medicine of N.J., 47 N.J. 358, 363, 221 A.2d 15 (1966); Allied Textile Printers v. Taxation Div. Director, 145 N.J.Super. 456, 461, 368 A.2d 375 (App.Div.1976), certif. den. 74 N.J. 271, 377 A.2d 676 (1977).
N.J.S.A. 54:32B-8(w) was the subject of judicial review in Mal Bros. v. Taxation Div. Director, 124 N.J.Super. 55, 304 A.2d 750 (App.Div.1973), certif. den. 63 N.J. 554, 310 A.2d 469 (1973). That case involved the issue of whether leased construction *546 equipment which was exclusively used in the performance of a road construction contract for an exempt organization constituted “materials” as used in N.J.S.A. 54:32B-8(w). The court, in denying the exemption, said:
... The exemption provision requires that the materials purchased or leased be “for exclusive use in erecting structures or building on, or otherwise improving, altering or repairing real property” of exempt organizations....
Materials and supplies to be incorporated in the structure or consumed in the course of construction are for “exclusive use” in such construction. On the other hand, if the materials or supplies will be still available for use after the construction for exempt organization is completed, they do not qualify materials and supplies for exclusive use in the construction for the exempt organization. [124 N.J.Super. at 61-62, 304 A.2d 750]
N.J.S.A. 54:32B-8(w) treats materials, supplies and services in the same way in granting the exemption. Accordingly, the principles expressed in Mai Brothers are equally applicable here.
The subject services were rendered to Bellezza’s machinery. Without such services, they would remain or become inoperable. The services were consumed in machinery which would still be available to plaintiff after completion of construction for an exempt organization. As such the machinery would not be consumed, or exclusively used, in that construction project.
Since both the basic statute and the regulation upon which plaintiff relies require the “exclusivity” test, plaintiff’s contentions must fail.
In view of the above holding, it is unnecessary to decide whether plaintiff’s argument would also require 100% of Bellezza’s activities to be in projects for exempt organizations during the years here involved.
Plaintiff’s alternative argument is that it was either the same entity or an agent for Bellezza.
The facts establish that plaintiff was a viable corporation during the years involved. It held itself out to the taxing authorities as such when it regularly filed tax returns showing income and expenses. Its tax returns also show that it had its own employees, bank accounts, investments and a pension or profit-sharing plan.
It is fundamental that when a corporate entity is formed for the purpose of engaging in business, it must meet its tax *547 obligations. In General Trading Co. v. Taxation Div. Director, 83 N.J. 122, 416 A.2d 37 (1980), the taxpayer maintained that it should not be subject to a deficiency in taxes pursuant to the Corporation Business Tax Act, N.J.S.A. 54:10A-1 et seq. The liability resulted from an allegedly inadvertent increase in the number of shares of corporate stock. The court said:
... It is one thing to find that particular conduct resulted from inadvertence and neglect; it is quite another to conclude that corporate tax liability may be avoided simply by using such eonclusory labels to characterize formal business decisions.... [at 131 — 132, 416 A.2d 37]
Seaview and Bellezza, with common ownership and directors, operated the respective businesses as two entities during the years involved.
Plaintiff’s position is identical with the contention advanced in Atlantic City Airlines v. Taxation Div. Director, 4 N.J.Tax 97 (Tax Ct. 1982), wherein this court stated:
... The law is that taxpayers must accept the tax consequences of their business decisions whether or not those consequences were contemplated. When business entities adopt separate corporate forms for the purpose of engaging in business, these entities must meet the tax obligations that necessarily flow from separate existence. The intercompany transactions are subject to tax. [at 107]
Labelling Seaview an agent of Bellezza is an effort to avoid tax liability by a conclusionary characterization of the business relationship of the entities. In General Trading the court stated the fundamental principle that a voluntary business decision “is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred.” In so doing it cited Commissioner v. National Alfalfa Dehydrating and Milling Co., 417 U.S. 134, 148, 94 S.Ct. 2129, 2136, 40 L.Ed.2d 717 (1975):
... This Court has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355 [357], 84 L.Ed. 406 (1940); Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 293, 55 S.Ct. 158 [160], 79 L.Ed. 367 (1934); Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266 [267], 79 L.Ed. 596, 97 A.L.B. 1355 (1934), and may not enjoy the benefit of some other route he might have chosen to follow but did not. “To make the taxability of the transaction depend upon the determination whether there existed an alternative form which the statute did not tax would create burden and uncertainty.” Founders General Corp. v. Hoey, 300 U.S. 268, 275, 57 S.Ct. 457 [460], 81 L.Ed. 639 (1937); Television Industries, Inc., v. Commissioner, 284 F.2d 322, 325 (C.A. 2 *548 1960); Interlochen Co. v. Commissioner, 232 F.2d 873, 877 (C.A.1956). See Gray v. Powell, 314 U.S. 402, 414, 62 S.Ct. 326 [333], 86 L.Ed. 301 (1941). [at 149, 94 S.Ct. at 2137]
As such, a taxpayer is responsible for the tax consequences of its business decisions, including the organization of its business.
In pursuing its argument that it should be considered as a single entity with, or agent for, Bellezza, plaintiff mistakenly relies on federal law as enunciated in Chicago Milwaukee & St. Paul R. Co. v. Minnesota Civic & Commerce Ass’n, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229 (1917). That case concerned the authority of a state commission to treat a railroad company, whose stock was wholly owned by two other railroad companies, as the agent of its stockholders for the purpose of preventing discriminatory charges for use of its railroad tracks. There was no question of taxation involved. Plaintiff was not the subsidiary of Bellezza. Rather, it was a sister corporation with the same officers and stockholders.
Federal law, contrary to plaintiff’s position, has long been firmly established with respect to the taxation of corporations. In Moline Properties v. Commissioner of Int. Rev., 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943), the court stated the applicable principles as follows:
The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator’s personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity.... [at 438-439, 63 S.Ct. at 1133-1134]
The court then went on to point out the very limited exceptions to the above rule:
To this rule there are recognized exceptions. Southern P. Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142, and Gulf Oil Corp. v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133, have been recognized as such exceptions but held to lay down no rule for tax purposes. New Colonial Ice Co. v. Helvering, supra (292 U.S. [435] 442, note 5, 54 S.Ct. 788 [791], 78 L.Ed. [1348] 1353, note 5); Burnet v. Commonwealth Improv. Co. supra (287 U.S. [415] 419, 420, 53 S.Ct. 198 [199], 77 L.Ed. [399] 402, 403). A particular legislative purpose, such as the development of the merchant marine whatever the corporate device for ownership, may call for the disregarding of the separate entity, Munson S.S. Line v. Commissioner of Internal Revenue (CCA 2d) 77 f(2d) 849, as may the necessity of striking down frauds on the tax statute, Continental Oil Co. v. Jones (CCA 10th) 113 in(2d) 557. In general, in matters relating to the revenue, the corporate form may be *549 disregarded where it is a sham or unreal. In such situations the form is a bald and mischievous fiction. Higgins v. Smith, 308 U.S. 473, 477, 478, 60 S.Ct. 355 [357, 358] 84 L.Ed. 406, 410 — 112; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. [at 439, 63 S.Ct. at 1134]
The case of Southern P. Co. v. Lowe cited in the aforesaid quotation involved the treatment of a subsidiary’s pre-1918 profits which had been used to satisfy sums owed by the parent to the subsidiary. Likewise, the Gulf Oil corp. v. Lewellyn case involved a transaction whereby the parent took over previously accumulated earnings. Further, plaintiff’s contention is not supported by a desire to enforce a particular legislative purpose as was the situation in Munson S.S. Line v. Commissioner of Internal Revenue.
The fact that plaintiff merged into Bellezza as of December 31, 1980 is irrelevant to the determination of taxable services during the years here involved. Each tax year is considered on the facts existing during such year.
As to the argument that plaintiff acted as an agent for Bellezza in performing the taxed services, the test of such relationship was set out in National Carbide Corp. v. Commissioner of Int Rev., 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779 (1949). The court there stated:
.. . Whether the corporation operates in the name and for the account of the principal, binds the principal by its actions, transmits money received to the principal, and whether receipt of income is attributable to the services of the principal and to assets belonging to the principal are some of the relevant considerations in determining whether a true agency exists. If the corporation is a true agent, its relations with its principal must not be dependent upon the fact that it is owned by the principal, if such is the case. Its business purpose must be the carrying on of the normal duties of an agent.... [at 437, 69 S.Ct. at 734]
The facts under review show that plaintiff was carrying on the normal duties of its corporate charter, i.e., repairing and maintaining machinery. That such service was restricted to Bollezza’s machinery cannot turn a sale of services into an agency relationship.
The aforesaid authorities show that there is no basis, under federal law, for plaintiff’s contention that plaintiff and Bellezza are one or that plaintiff was Bellezza’s agent in performing work on the machinery. Rather, federal law and the established *550 law of New Jersey are consistent in establishing that plaintiff was a separate viable corporation and, further, not an agent for Bellezza.
Defendant will submit a form of judgment pursuant to R 4:42-l(b).