212 N.J. Super. 164 (1986)
514 A.2d 532
MAHER TERMINALS, INC., PLAINTIFF-RESPONDENT-CROSS APPELLANT.
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT-APPELLANT-CROSS RESPONDENT, ZIM-AMERICAN ISRAELI SHIPPING CO., INC., PLAINTIFF-RESPONDENT-CROSS APPELLANT,
v.
DIRECTOR, DIVISION OF TAXATION, DEFENDANT-APPELLANT-CROSS RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1986.
Decided August 20, 1986.
*166 Before Judges SHEBELL and ASHBEY.
Martin L. Wheelwright, Deputy Attorney General, argued the cause for appellant-cross respondent Director, Division of Taxation (W. Cary Edwards, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel, Martin L. Wheelwright on the brief).
Henry T. Benedetto argued the cause for respondent-cross-appellant Maher Terminals (Meyner and Landis, attorneys; Henry T. Benedetto and Alice J. Guttler on the brief).
Anthony Limitone, Jr., argued the cause for respondent-cross-appellant Zim-American Israeli Shipping Co., Inc. (Limitone & Hillenbrand, attorneys; Anthony Limitone, Jr. and Joan H. Hillenbrand on the brief).
PER CURIAM.
Plaintiff Zim-American Israeli Shipping Co., Inc. (Zim) is an international shipper. Plaintiff Maher Terminals, Inc. (Maher) operates a marine terminal at which plaintiff Zim docks container ships and from which plaintiff Zim's cargo containers are dispatched to their ultimate commercial destinations.
The Director of the Division of Taxation assessed a sales tax for Maher's charge for the repair and maintenance (R & M) and parts provided to Zim's containers and chassis (the mobile unit under the containers). Plaintiff Maher was also assessed sales tax on the charges for its rental of cranes from Sea-Land Service, Inc. (Sea-Land) (not a party to this suit).[1]
Plaintiff Zim paid part of the tax and sought a refund which the Tax Court granted, except for the tax on the sale of parts *167 for Zim's chassis.[2] Maher's application for abatement of the tax on the crane rentals was denied by the Tax Court. Zim sought and was denied interest on its refund.
With the one exception, all parties appealed and cross-appealed the adverse portions of the Tax Court decision which is reported at 6 N.J. Tax 513 (Tax Ct. 1984). Since the facts and legal issues are fully set forth in the Tax Court opinion there is no need for extensive repetition.

I
While appeal in this matter was pending, the case of Hapag-Lloyd A.G. v. Director, Div. of Tax. was decided by Judge Lasser, P.J.T.C. and published at 7 N.J. Tax 108 (Tax Ct. 1984). That decision was in direct conflict with that of Judge Crabtree concerning the issue of the taxability of R & M of "containers" carried on "container ships". On March 20, 1986, we affirmed Judge Lasser and overruled Judge Crabtree's determination which favored the taxpayer on that issue. Hapag-Lloyd A.G. v. Director, Div. of Tax., 8 N.J. Tax 323 (App.Div. 1986). Therefore, we will not address that issue anew, namely that charges for container R & M and the sale of parts to fix containers are not exempt from the Sales and Use Tax pursuant to the applicable pre-1980 statute, N.J.S.A. 54:32B-8.12, which exempted from tax "repairs ... of ... commercial ships ... primarily engaged in interstate or foreign commerce, and ... property used by or purchased for the use of such vessels for ... maintenance and repairs...."[3]

*168 II
The interpretation question under N.J.S.A. 54:32B-8.12 revolved around whether the container represented such an integral part of a container ship that R & M to containers was R & M to the ship itself. We have held containers were separate units. This ruling, however, does not dispose of the issue of the taxability of the container R & M charges in the case at bar. Plaintiffs Zim and Maher contend that if the fee for R & M to the containers is not exempt from tax because the container is not part of the ship, then it is exempt under N.J.S.A. 54:32B-8.11[4] as a "charge for the transportation of ... property."
A review of the history provides little insight into the legislative intent behind the passage of N.J.S.A. 54:32B-1 et seq. or any of its exemptions. The Sales and Use Tax Act (L. 1966, c. 30) was introduced as an alternative tax following legislative defeat of a State income tax. No public hearings were held and no statements accompanied the sales tax bill. The Report of the New Jersey Tax Policy Committee, Part V at 72 (1972) in its review of Sales and Use Tax Act exemptions recommended maintaining the transportation exemption section because of "(1) the virtually insurmountable administrative problems of imposing such a tax and (2) the fact that such transportation is conducted on an interstate, as well as intrastate, basis." On this appeal the Division does not suggest that charges for Maher's stevedoring operation are taxable. N.J.S.A. 54:32B-8.11. Thus, Maher's primary activity is tax-exempt.
We are satisfied, however, there is no evidence that by "charges for transportation" the legislature meant "charges for R & M of equipment used in transportation." Exemptions from taxibility for repair charges must be stated in clear and *169 unambiguous language. Body Rite Repair Co. v. Director, Div. of Tax., 89 N.J. 540, 544 (1982). Moreover, charges for R & M have consistently been taxed separately from the purpose for which the equipment is used, N.J.S.A. 54:32B-3(b)(2), even if that use is exempt. Seaview Demolition v. Director, Div. of Tax., 4 N.J. Tax 541 (Tax Ct. 1982), aff'd 6 N.J. Tax. 254 (App. Div. 1983). Plaintiffs' claim of tax exemption for R & M of containers on this basis has no merit.

III
Plaintiffs also sought exemption under N.J.S.A. 54:32B-8.11 for the charges for R & M of chassis. We reject this claim for the same reasons as applied to containers.
In the alternative, plaintiffs sought exemption for charges for R & M of the chassis and containers, under N.J.S.A. 54:32B-3(b)(2)(iii) which exempts from tax the receipts from every sale of "services rendered with respect to trucks, tractors, trailers or semi-trailers by a person who is not engaged, directly or indirectly ... in a regular trade or business offering such services to the public....".
We first reject plaintiff's claim as to an exemption for containers under the section. It is not the container which is designed to be "drawn by a motor vehicle". The chassis, however, do fall within the definition.[5] The chassis are carriers specially made to transport the containers and the issue concerned Maher's qualification. Judge Crabtree found that Maher was not engaged in the business of chassis R & M but rather in the business of stevedoring. It was his conclusion that Maher provided chassis R & M to Zim only as an ancillary service. Although the service was separately charged and invoiced, it was an accommodation intended primarily to keep the containers moving in and out of the terminal. Maher did not perform substantial repairs, nor were substantial repairs *170 undertaken on Maher's premises. We are satisfied this factual finding is supported by the record and the judgment of the Tax Court should be affirmed on this issue for the reasons stated by Judge Crabtree, 6 N.J. Tax at 526-528.

IV
A separate issue was presented by Maher for abatement of tax on the charges for use of cranes between Maher and Sea-Land. Maher and Sea-Land are adjoining marine terminals. Both are engaged in the same business of transportation of goods to and from container ships. Sea-Land, however, is a terminal only for Sea-Land container ships. Essential to the operation of both terminals is the use of enormous cranes which run on rails and lift the containers from one place to another. Under ordinary circumstances it was posited that each had sufficient cranes for the operation of its business. Occasions arose, however, when one of the two would need another crane. An agreement was entered into whereby each could use the other's cranes.
The agreement in question recited that Maher and Sea-Land had connected their crane rails, and that each had the right "whenever a crane is not being used by its owner or undergoing non-deferrable maintenance" to have the other's crane available. Specific personnel of each party was to have the authority to grant a request for the crane of the other, and "[r]edelivery to owner shall be made as soon as practicable but not later than one hour prior to commencement of period to be worked." Provisions were made for insurance. Separately, the parties agreed that, to the extent that the use of each other's cranes was not mutual, there would be an hourly charge, and that the discrepancy would be adjusted each quarter.[6]
*171 All parties agree that the rental or exchange of equipment for consideration is taxable and "sale" includes "rental" or "exchange" for taxation purposes. N.J.S.A. 54:32B-2(f). Maher contends, however, that its use of Sea-Land's cranes on this intermittent basis represented an exempted "casual sale." N.J.S.A. 54:32B-8.6. A "casual sale" is defined as an "isolated or occasional sale of an item ... by a person who is not regularly engaged in the business of making sales at retail where such property was obtained by the person making the sale through purchase or otherwise, for his own use in this State." N.J.S.A. 54:32B-2(u).
Legislative history does not offer any specific reference to the meaning of this exemption, and we can find no case law interpreting its meaning when applied to rental or exchange. The Commission on State Tax Policy, The 12th Report at 25 (1968) acknowledges that the exemption for occasional sales exists for administrative convenience. It is an exemption of "trivial" transactions. Id. at xiii. The Report of the New Jersey Tax Policy Committee, Part V at 72 concludes that the "basic intent of this exemption is practical and realistic from an administrative point of view."
In our efforts to discern legislative intent, however, we note that the exchange of motor vehicles between truckers in which neither is in the business of truck rental and in which the exchange is with persons engaged in carrying freight would not be taxable.[7]
*172 In 1976, Maher used Sea-Land cranes for 288.5 hours, during January through July, and after that only during September and December. In 1977, Maher had no need for a Sea-Land crane until April, and then used them each month on some occasion until September. Again, from August 1977, the total use was twice in September and twice in December. The total number of hours for 1977 was 187. In 1978, the hours were down to 183, twice in March, none in April, three occasions in July (twice with two cranes). During that year, however, Maher needed a Sea-Land crane each month from July through December.
In concluding that the use of Sea-Land's crane by Maher was not "casual," Judge Crabtree stated that dictionary definitions did not help.
Suffice to say that Maher's use of Sea-Land's crane upon 50 occasions over a three-year span, about one every three weeks, is neither isolated nor occasional. The transactions occurred with regularity as part of a pattern or practice and in accordance with the terms of a written agreement.
Cases interpreting similar statutes generally take two separate approaches. See 68 Am.Jur.2d, Sales & Use Taxes, sec. 123 (1981). The first may be termed a definitional approach. The second relates the meaning of "casual" or "isolated" to the entire intent of the applicable sales tax statute.
The following are examples of a court's redefinition of "casual." Casual is "something relatively brief and passing." Graham v. Green, 31 N.J. 207, 211 (1959).[8] "Casual is a happening without design and without being expected; coming without regularity; occasional ... [i]t carries the idea of lack of continuity." Trico Electric Cooperative Inc. v. State Tax Com., 79 Ariz. 293, 296, 288 P.2d 782, 784 (Sup.Ct. 1955). If, however, the characteristic of systematic recurrence and continuity develops, the sale no longer remains casual. Cf. L.A. Young Sons Const. Co. v. State Tax Com., 23 Utah 2d 84, 457 P.2d 973 *173 (Sup.Ct. 1969). A casual sale is a nonrecurring sale. Two separate selling events over a twelve month period is nonrecurring. Three separate selling events is recurring and thus taxable. In re Hubs Repair Shop Inc., 28 B.R. 858 (Bankr. N.D. Iowa 1983). "[R]egular suggests continuity and consistency of occurrence and excludes the idea of incidental or casual sales to the public." Colorado College v. Heckers, 33 Colo. App. 219, 517 P.2d 419, 421 (1973).
In those cases which concentrate on the total meaning of the statute, it is generally held that a transfer out of the course of business should be considered exempt. Gemma Prop. Etc. v. City of Tuscon, 130 Ariz. 369, 636 P.2d 147 (Ct.App. 1981). The number of transactions is not necessarily controlling. "The real question is whether the sale or lease is in line with the business for which the seller or lessor was organized and in which it engages." Besser Company v. Bureau of Revenue, 74 N.M. 377, 383, 394 P.2d 141, 146 (Sup.Ct. 1964). The exemption of casual sales upon closer inspection is not an exemption but rather a "direct definitional limitation" upon the term retail sales. In re Oilfield Instruments, 53 B.R. 199, 203 (Bankr. W.D. La. 1985).
See also Staley v. Missouri Director of Revenue, 623 S.W.2d 246 (Mo.Sup.Ct. 1981) (No banc) (liquidation sale of fixtures). Big Three Industries, Inc. v. Keystone Industries, Inc. 472 S.W.2d 850 (Tex.Civ.App.Div. 1971) (one sale of an airplane used for corporate purposes). See Green v. Pederson, 99 So.2d 292 (Fla.Sup.Ct. 1957) (where zoo's policy was to trade animals, sale of surplus animals not taxable (emphasis added)). As to occasional rental, see Richard Bertram & Co. v. Green, 132 So.2d 24 (Fla. Dist. Ct. App. 1961) (broker's charge to owner for yacht rental to others not taxable).
While it is clear that Maher's use of Sea-Land cranes was not "isolated," and was in accordance with an agreement, we are satisfied the use could come within the definition of "occasional," meaning "dictated by occasion." The true question is *174 whether the Sales and Use Tax Act was intended to cover the intermittent exchange of equipment between entities engaged in international commerce and far from the source or distribution of any product to any customer.
We recognize that all exemptions from tax are to be strictly construed. Metpath Inc. v. Taxation Div. Director, 96 N.J. 147, 152 (1984); Town of Bloomfield v. Academy of Medicine, 47 N.J. 358, 363 (1966); Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214 (1961).
Clearly, however, neither of these parties is in the business of renting cranes. From the contract, the arrangement was intended to be one of service exchange. There is certainly no danger of widespread tax avoidance where vastly expensive equipment, available only to the parties in question, is exchanged once in a while as needed. No discrimination against other taxpayers is even implied, since no supplier of cranes on the open market could possibly fill this unique need. While the number of occasions of use is not infrequent, there is little pattern to be discerned. Over the three years, there was a 36.5% decrease in Maher's use of Sea-Land's cranes, and a complete change of pattern if considered on an annual basis from 1976 to 1978.
We conclude that the arrangement between Maher and Sea-Land codified an exchange of services as the occasion demanded and was therefore "casual." Accordingly, Maher should be entitled to an exemption from the Sales and Use Tax for its use of Sea-Land's cranes.

V
The final issue raised on this appeal is the awarding of interest due Zim on any refund by reason of its exemption from tax for R & M on its chassis. Judge Crabtree concluded that the tax to be refunded was paid voluntarily, and therefore no refund would carry interest. Cf. Continental Trailways, Inc. v. Director, Div. of Motor Vehicles, 102 N.J. 526 (1986). We *175 are satisfied Judge Crabtree correctly ruled on this issue and affirm primarily for the reasons put forth in his letter opinion of March 14, 1985.
Affirmed in part and reversed in part.
NOTES
[1] Plaintiff Maher, as the seller of services, was required to collect any tax properly due on the charge for R & M and parts of the chassis and containers. Plaintiff Zim also was liable as buyer for these taxes. Maher was taxed separately on the rental of the cranes from Sea-Land. N.J.S.A. 54:32B-14.
[2] The Tax Court's affirmance of the Division's assessment of sales tax for parts supplied to Zim's chassis is not the subject of cross-appeal.
[3] As all opinions point out, the statute was amended as of September 11, 1980 to provide that repairs to containers would be exempt. The amendment was not, however, retroactive. Judge Crabtree held the 1980 amendment evidenced original legislative intent. We affirmed Judge Lasser's contrary holding.
[4] The applicable section of the statute in effect as of the time of the assessment is N.J.S.A. 54:32B-8(k). No substantive change was made by the renumbering. Throughout this opinion the numbering system created by L. 1980, c. 105 will be used, except in quoted cases.
[5] The State does not contend otherwise.
[6] The record does not show whether Sea-Land ever used a Maher crane during the audit period. Maher appears to be charged with the rental value of its total use of Sea-Land cranes.
[7] N.J.S.A. 54:32B-8.23 states:

Receipts from the renting, leasing, licensing or interchanging of trucks, tractors, trailers or semitrailers [sic] by persons not engaged in a regular trade or business offering such renting, leasing, licensing or interchanging to the public, are exempt from the tax imposed under the Sales and Use Tax Act, provided that such renting, leasing, licensing or interchanging is carried on with persons engaged in a regular trade or business involving carriage of freight by such vehicles.
No one contends that this section is applicable to this case. Cranes, operating as they do on tracks, are not motor vehicles, N.J.S.A. 54:32B-2(v).
[8] There is no New Jersey case defining "casual" in the sales tax context. The context in this case is workers' compensation.