AXELRAD, J.T.C.
Modern Handling Equipment of New Jersey (“Modern Handling”), a New Jersey corporation engaged in the selling, leasing, and servicing of machinery and equipment for commercial uses, appeals a tax deficiency assessed by the Director, Division of Taxation (“Director”), pursuant to the Sales and Use Tax Act, N.J.S.A 54:32B-1 to -29, on the repair and maintenance portion of several of its machinery and equipment leases. The parties filed a joint stipulation of facts in connection with cross motions for summary judgment. The court finds there are no genuine issues as to any material facts; therefore, the matter is ripe for summary judgment under R. 4:46-2 and the standards set forth in *273 Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 523, 666 A.2d 146 (1995).
Modern Handling leased fork lifts “with all replacement parts, additional repairs and accessories” to a variety of commercial users for an average period of three to five years. The leases provided for Modern Handling to service the equipment and maintain it in proper working condition, at its expense, with the lessee responsible only for expenses arising out of the daily, proper operation of the equipment, such as supplying necessary fuel and repairing flat tires. The contracts did not require a specific maintenance schedule and imposed no limitation on the amount of service calls or extent of repair work to be performed by lessor, who was available twenty-four hours a day for service as needed. Modern Handling charged its lessees a lump sum, monthly rental fee for this “maintained equipment”, calculated by examining several factors, including the purchase price of the equipment to be leased, freight charges, interest rates, a profit element and projected repair and maintenance service costs, which were reflected on an internal allocation statement for each transaction. The lessees would not incur any additional charges if Modern underestimated the actual costs for repairing and maintaining the equipment during the lease term or get a refund if it over-estimated the costs.
Modern Handling leased its equipment to two categories of lessees, those who intended to use the equipment for a variety of purposes and those who intended to use the equipment in the manufacturing process. In the former instances, which were nonexempt lease transactions, Modern Handling paid the entire sales tax to the Director at the inception of the leases based upon the sales price of the equipment purchased for lease pursuant to N.J.S .A 54:32B-2(bb). In addition, in several of these transactions, Modem Handling paid tax on the repair and maintenance service components of the payments made under these lease agreements, based upon the total anticipated cost of these services as reflected on the internal rate calculation sheet, and invoiced its customers monthly for such charge. The Director does not chai *274 lenge the sufficiency of these tax payments. Although Modem Handling claims it erroneously paid sales tax on the maintenance services, it has chosen not to raise the issue in this appeal and has not sought a refund of those payments.
In those instances where its customers intended to use the equipment in the manufacturing process, which leases are the subject matter of this appeal, Modern Handling submitted a ST-40 Lessor Certification form to the Director. Modern Handling received an exemption from sales tax primarily under N.J.S.A. 54:32B-8.13(a), as the leases involved “[sjales of machinery, apparatus or equipment for use or consumption directly and primarily in the production of tangible personal property by manufacturing, processing, assembling or refining.” The customers were not charged separately for maintenance or repair services relating to the equipment leased, and in the exempt lease transactions, Modem Handling did not collect or remit sales tax on that internally projected component of the monthly payments.
In a Final Determination dated November 13, 1996, the Director assessed a tax deficiency of $81,790.31, exclusive of interest, on the repair and maintenance portion of the lease receipts of the exempt leases, as allocated in the taxpayer’s books, for the period from January 1, 1991 through December 31, 1993, on the theory that these services are subject to sales tax notwithstanding the exempt nature of the leasing of the equipment. The Director does not challenge Modern Handling’s claiming these exemptions but asserts that, since Modern Handling internally allocated a readily-definable amount attributable to the repair and maintenance of the leased equipment, this portion of the rental payment should be separately identified and taxes paid thereon. The Division computed this deficiency based upon Modern Handling’s internal rate calculation documents which projected an anticipated dollar amount attributable to the repair and maintenance service component of each lease. The calculation sheets for two of the sample leases reflected the projected cost of the maintenance rate to be 35% and 48% of the total monthly rental fee. The parties agree *275 the Director’s computation of the assessment is mathematically correct.
Modern Handling contests the imposition of the tax on the grounds that the exemption granted to the equipment under N.J.S.A. 54:32B-8.13(a) automatically extends to the entire lease transaction. In the alternative it argues that in 1989 the Legislature changed the treatment of leases in New Jersey so that the lessor is considered the “user” of the property and thus has the right to repair and maintain its property without sales and use tax ramifications. Modern Handling further argues that N.J.S.A 54:32B-8(b)(2), which imposes a tax on services to maintain and repair tangible personal property, is inapplicable since its equipment is held for lease in the regular course of business.
The New Jersey Sales and Use Tax Act imposes a tax upon “[t]he receipts from every retail sale of tangible personal property, except as otherwise provided in this act.” N.J.S.A 54:32B-3(a). The Act also provides for a tax upon the receipts from repair and maintenance services under certain limited circumstances. N.J.S.A. 54:32B-3(b)(2). “Receipt” is defined as “[t]he amount of the sales price of any property and the charge for any service taxable under this act----” N.J.S.A 32B-2(d). A retail sale includes the purchase of tangible personal property for lease. N.J.S.A. 54:32B-2(e)(3).
Modern Handling’s receipts from the equipment leased in the subject transactions were exempt from sales and use tax under the manufacturing exemption of N.J.S.A. 54:32B-8.13(a). Modern Handling asserts that the spirit of this sales tax exemption automatically requires its extension to the entirety of the lease transactions. Its position is that since the leased property is exempt from sales and use tax, the repair and maintenance services performed thereon should be exempt from taxation as well. The court rejects Modern Handling’s claim of tax exemption on this basis.
The Supreme Court discussed the history of the manufacturing exemption in New Jersey in GE Solid State v. Director. Div. of *276 Taxation, 132 N.J. 298, 625 A.2d 468 (1993). Originally, the exemption was introduced in 1966, but was repealed in 1970. In 1972, the New Jersey Tax Policy Committee “issued a report to the Governor recommending the restoration of the manufacturing exemption because its absence retards investment and the growth of the state’s industrial base.” Id. at 309, 625 A.2d 468. The Legislature restored the exemption in 1977 by enacting L. 1977, c. 18, § 8.13a in order “to make New Jersey manufacturers more competitive with manufacturers from other states.” Id. at 310, 625 A.2d 468 (citing Senate Revenue, Finance and Appropriations Committee Statement to Assembly Bill No. 1761 (May 13, 1976)). The court recognized tax exemptions are normally strictly construed against the claimant, see, e.g. Metromedia. Inc. v. Director., Div. of Taxation, 97 N.J. 313, 478 A.2d 742 (1984), but found the policy behind the exemption of the property to be controlling.
“Exemptions from taxability for repair charges must be stated in clear and unambiguous language.” Maher Terminals, Inc. v. Director. Div. of Taxation, 212 N.J.Super. 164, 168-69, 514 A.2d 532 (App.Div.1986) (citing Body-Rite Repair Co. v. Director. Div. of Taxation, 89 N.J. 540, 544, 446 A.2d 515 (1982)). “Moreover, charges for R[epair] & M[aintenance] have consistently been taxed separately from the purpose for which the equipment is used, N.J.S.A. 54:32B-3(b)(2), even if that use is exempt.” Maher Terminals, supra at 169, 514 A.2d 532 (citing Seaview Demolition v. Director, Div. of Tax ., 4 N.J. Tax 541 (Tax 1982), aff'd, 6 N.J.Tax 254 (App.Div.1984)). In all of these cases the courts held that the statutory exemptions from sales tax afforded to the property did not extend to services rendered thereon.
N.J.S.A. 54:32B-8.13(a) grants a tax exemption for sales of “machinery, apparatus or equipment.” There is no evidence in the language or history that the legislature meant to encompass repair and maintenance services in this statutory exemption. As such, this subsection cannot be automatically extended as a matter of law to exempt the repair and maintenance components of the lease agreements from sales tax liability.
*277 Modern Handling alternatively contends that the language of the 1989 amendments to the Sales and Use Tax Act and legislative history do not support the taxation of these services under N.J.S.A 54:32B-3(a). The court agrees. The New, Jersey Legislature fundamentally changed the sales and use tax treatment of leased tangible, personal property when it amended relevant portions of the Sales and Use Tax Act in 1989. Introductory Statement to Assembly Bill No 4821 (June 28, 1989), enacted as L. 1989, c. 123. Under the prior law, the lessor who purchased property for lease was not subject to the sales tax, but rather was considered as having purchased it for resale to the lessee. The lessee was treated as the user of the property, and, therefore, was responsible for the payment of any sales taxes. The lessee paid the sales tax at the same time it made its lease payments. Id.
The amendments expanded the definition of “retail sale” to include the purchase of personal property for lease, N.J.S.A. 54:32B-2(e)(3), changed the treatment of long-term lease transactions, lasting more than 28 days, N.J.S.A 54:32B-2(aa), and made the lessor the statutory end user of the property and responsible for the payment of sales or use tax. 18 New Jersey State Tax News, 41 (May/June 1989); Introductory Statement supra . The Legislature gave the lessor the option to pay sales tax, which was due when the lease for the property was executed, on “either (1) the amount of [its] purchase price or (2) the amount of the total of the lease payments attributable to the lease of such property.” N.J.S.A. 54:32B-2(bb). If the lessor elects to pay sales tax on the amount of the sales price, each subsequent lease or rental is a retail sale. 54:32B-3(a). “Lessors who elect to pay tax on the total of the leased payments must make the election each time a new lease is executed.” 18 New Jersey State Tax News, supra at 41. The lessor does not collect sales tax from the lessee, although there is nothing in the law which prohibits this added expense to a lessor from being built back into the lessee’s monthly payment. St.Tax Rep. (CCH),¶ § 60-460, at 7503. (Citing N.J. State Tax News July/August 1989).
*278 The legislative history is clear that this procedural change which accelerated the payment of tax on lease transactions was intended as a funding device which was expected to generate $110,000,000 of sales tax revenue in fiscal year 1990 in order to combat a $500,000,000 revenue shortfall for that fiscal year. New Jersey State Tax News, supra, at 41. Additionally, the legislature anticipated that the new treatment would save costs in administration of the tax and in taxpayer compliance because of the requirement of only one payment for a particular leased item from a smaller number of payors and would have the advantage of making the tax payable up front at the time of purchase, thereby bringing the treatment of leases more on par with the treatment of outright sales. Id.; Introductory Statement.
The Director’s position that the 1989 amendments only shifted sales tax liability from the lessee to lessor on equipment but not on services rendered to that equipment, i.e. the maintenance component in an integrated lease, is directly at odds with the legislative history of the Act. While logic may support the Director’s position that the lessee is the one who physically uses the forklifts which will necessitate their repair and maintenance, the law clearly does not. The reality has been defined by the Legislature in its 1989 amendments which were intended to reclassify the lessor as the sole “user” of leased property for purposes of the sales tax transaction. 18 New Jersey State Tax News, 41 (May/ June 1989); Introductory Statement. As such, there is no room for judicial interpretation. See State v. Sutton, 132 N.J. 471, 479, 625 A.2d 1132 (1993). Furthermore, N.J.S.A. 54:32B-2(aa) makes it clear the lessor merely transfers the possession of property under a lease while retaining title to the leased property. Thus, Modern Handling is the statutory user, as well as title holder, of the leased property. As owner, it has the right to maintain its equipment and protect its investment on the property that will be returned to it at the end of the lease, without incurring additional sales tax liabilities.
Under the amendment, Modern Handling, as the lessor, title holder, and statutory “user” of the equipment, had the option to *279 pay sales tax on its purchase price rather than on the total lease payments. It is immaterial to the legal analysis of these provisions that the subject leased equipment itself is exempt from sales and use tax and if the lessor chose the first alternative, no tax would be due on the entire lease transaction. There is nothing in the statute which distinguishes between lessors of exempt and non-exempt property regarding their characterization as “users” and their option for paying taxes. To require a lessor like Modern Handling to pay sales tax on both the sales price of the property and future anticipated maintenance and repair costs on its own property, would effectively strip the lessor of these options under the 1989 Amendments to the Act.[1] The Division cannot interpret the statute in a manner to allow it to have it both ways: it cannot treat lessors as “users” of the equipment in order to reduce administrative costs and accelerate sales tax revenue to meet budgetary shortfalls, while effectively treating lessees as “users” of the property for the purpose of repairing and maintaining the lessor’s asset. One of the consequences of the Legislature’s changing the incidence of tax and the definition of “user” in its 1989 Amendments is its loss of sales tax on the integrated service component of the type of “maintained equipment” that is leased in this case.
The Director claims that the lease contract is divisible and the service component should be severable from the equipment portion of the lease, since Modern Handling’s internally projected or anticipated calculations include a separate cost for the repair and maintenance service. Accordingly, it asserts, the service component would be taxable as it would be a separate transaction not specifically exempt from taxation under the Act. The primary criteria for determining whether a contract is entire or divisible is the intention of the parties, to “be ascertained from the circum *280 stances surrounding the agreement and contract itself.” Studzinski v. Travelers Ins. Co., 180 N.J.Super. 416, 419, 434 A.2d 1160 (Law Div.1981). The “essential inquiry is whether there was a single assent to a whole transaction ... or a separate assent to each of several things involved.” Id. at 420, 434 A.2d 1160.
Modern Handling and its customers agreed to lease equipment which is to be repaired and maintained by Modern Handling, for a lump sum, monthly payment. This intent is evidenced by the express language of the contract and single price charged for the transaction. There is no evidence that the conduct of the parties deviated in any way from the terms of the contracts. It would be a different situation if the lessor offered unmaintained equipment, had a separate contract for repair and maintenance, billed its customers for every service call, or had the right to back charge its customers for any excess expenses actually incurred for these services over the projected amount calculated by Modem Handling at the outset of the contract.[2] Absent fraud, there is no prohibition against the structuring of a transaction in accordance with the law in order to reduce tax liability. “The principle that a business decision will be given its tax effect according to what actually occurred promotes the public interest in tax certainty and thereby conforms with general business expectations.” General Trading Co., Inc, v. Director. Div. of Taxation, 83 N.J. 122, 138, 416 A.2d 37 (1980). The parties’ business decision to lease “maintained equipment” for a set cost, rather than enter into separate contracts for the leasing of the equipment and its maintenance, must be given the appropriate tax effect.
The court finds that the maintenance and repair services are an integral part of the lease of this equipment, and are not a divisible component. The principal transaction is the leasing of equipment, *281 and the bundling of these incidental services into the lease does not result in an additional transaction subject to allocation and taxation by the Director. Each lease gives rise to a single transaction for taxation purposes, irrespective of the fact that by Modem Handling electing to pay sales tax on the purchase price of the equipment as permitted by N.J.S.A. 54:32B-2(bb), no sales tax will be due because of its exempt status under N.J.S.A. 55:32B-8.13(a).
The fact that Modern Handling calculated the lump sum, monthly rental fee for its maintained equipment by examining the purchase price of the equipment to be leased, freight charges, interest rates, a profit element, and projected, repair and maintenance service costs, and chose to prepare an internal allocation statement for each transaction for its own purpose, has no bearing upon its tax liability under N.J.S.A 54:32B-3(a). Modern Handling’s analysis of projected costs, not the actual price of the service, as a factor to consider in determining the rental fee of the maintained equipment, is fundamentally an audit and accounting issue. This internal allocation does not result in an additional transaction subject to taxation by the Director.
The Director submits the lessee had an obligation under N.J.S.A . 54:32B-12(a) to separate all the elements of the leases and assign the appropriate amount of sales tax to the repair and maintenance component. This argument falls wide of the mark. This statute requires the person collecting sales tax to state the amount of the sales or use tax charged separately from the other charges listed in an invoice. Neither the statute nor any Director’s regulation requires a separate accounting of sales and use tax charged for each different service or good or imposes a tax obligation on the service portion of an integrated lease transaction.
The Director further relies upon N.J.S.A. 54:32B-3(b)(2) as an additional statutory basis upon which to assess the sales tax against Modern. Pursuant to this section, services pertaining to “maintaining, servicing, [and] repairing tangible personal property not held for sale in the regular course of business ... (emphasis added)” are subject to sales and use tax. In view of the court’s *282 finding that each lease constitutes a single taxable transaction, in which the repair and maintenance service is a non-divisible component, this subsection is not applicable.
The court finds as a matter of law that: (1) the “manufacturing” exemption from sales tax accorded to the leased equipment under N.J.S.A 54:32B-8.13 does not automatically extend to the repair and maintenance service component of the leases; (2) Modern Handling, a lessor, is treated as a “user” under the 1989 Amendments to the Salés and Use Tax Act, and by electing to pay sales tax on the purchase price of the equipment rather than on the total lease payments, has the right to protect its investment by maintaining its equipment without incurring additional sales tax liabilities where it is leasing “maintained equipment” in an integrated transaction; (3) Modem Handling had no obligation under N.J.S.A 54:32B-12(a) to allocate the lease payments between equipment and service in accordance with its internal calculations and pay and collect sales tax on the internally calculated repair and maintenance component of the monthly payment; and (4) N.J.S.A 54:32B-3(b)(2) is not applicable as each lease constitutes a single taxable transaction, in which the repair and maintenance service is a non-divisible component. Accordingly, the court directs entry of a judgment in favor of Modem Handling and canceling the sales tax deficiency assessed by the Director.

 Although it is interesting that Modem Handling included sales tax on the maintenance components of some of the non exempt leases that are not the subject of the assessment herein, albeit according to counsel "erroneously”, such action has no impact on the court’s determination of whether or not the repair and maintenance services are a taxable event under the Sales and Use Tax Act.

 For example, see Maher Terminals, Inc. v. Director, Div. of Taxation, supra, 212 N.J.Super. 164, 514 A.2d 532, and Body-Rite Repair Co. Inc. v. Director, Div. of Taxation, supra, 89 N.J. 540, 446 A.2d 515, involving separately billed maintenance contracts.