159 N.J. Super. 373 (1978)
388 A.2d 250
FENWICK MACHINERY, INC., PLAINTIFF,
v.
A. TOMAE & SONS, INC., A NEW JERSEY CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
THE AMERICAN INSURANCE COMPANY, THIRD-PARTY DEFENDANT-RESPONDENT, AND PINKERTON'S, INC., AND TENDUN CONSTRUCTORS, THIRD-PARTY DEFENDANTS, AND BROUNELL, KRAMER, WALDOR, INSURANCE BROKERS, THIRD-PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 1978.
Decided May 9, 1978.
*375 Before Judges MICHELS, PRESSLER and BILDER.
Mr. Leonard Rosenstein argued the cause for appellant Brounell, Kramer, Waldor, Insurance Brokers (Messrs. Feuerstein, Sachs and Maitlin, attorneys).
Mr. Richard D. Catenacci argued the cause for respondent The American Insurance Company (Messrs. McElroy, Connell, Foley and Geiser, attorneys).
BILDER, J.S.C. (temporarily assigned).
This is an appeal by an insurance broker from a determination that a Broad Form Contractors' Equipment Floater did not cover damage to an after-leased but yet unscheduled item of heavy equipment and from judgments in favor of the insured against the broker for negligence in interpreting the policy and in favor of the insurance company and against the broker for common law indemnity.
On June 5, 1973 Fenwick Machinery, Inc. leased a piece of heavy construction equipment to A. Tomae & Sons, Inc. On June 13, while in Tomae's possession, the equipment was damaged. At that time Tomae (hereinafter the insured) was insured under a Broad Form Contractors' Equipment Floater issued by The American Insurance Company (American) and acquired by the insured through its insurance broker Brounell, Kramer, Waldor, Insurance Brokers (hereinafter the broker), an agent of American. American disclaimed coverage of the loss and litigation ensued.
Fenwick sued the insured; the insured brought a third-party action against the broker and the insurance company, and the insurance company cross-claimed against the broker for indemnity. Fenwick obtained a judgment of $21,907.50 *376 against the insured; the insured obtained a similar judgment against the broker and the insurance company, and the insurance company obtained an indemnity judgment against the broker.
Prior to trial the broker and the insured brought motions for summary judgment against the insurance company, asserting that as a matter of law the policy covered the loss. The insurance company brought a cross-motion for summary judgment contending noncoverage. The trial judge found that the policy did not by its terms afford coverage and therefore denied the broker and insured's motions and granted the insurance company partial summary judgment with respect to the policy language  leaving open the question as to whether the company might still be bound by representations of its agent.
The insurance policy and its effectiveness are undisputed. The terms relevant to this dispute are as follows  from the first page of the policy:

1. PROPERTY INSURED
This policy insures Contractors' Equipment (as set forth in schedule on or attached to this policy) the property of the Insured or the property of others held by the Insured and for which the Insured is liable.

* * * * * * * *

9. ADDITIONALLY ACQUIRED PROPERTY
Subject otherwise to all its terms and conditions, this policy is extended to cover additional items of a nature similar to those scheduled herein or usually covered under a Contractors' Equipment Floater, the property of the Insured, which items have been acquired subsequent to the attachment date and during the term of this policy. In consideration of this extension the Insured agrees to report such additions within thirty (30) days from the date acquired and to pay premium thereon from the date acquired at pro-rata of the policy rate. It is specifically agreed and understood, however, that this policy shall cease to cover such additional items if they are not reported to the Company within the said thirty (30) day period. The Company shall not be liable under the provisions of this clause for more than the actual cash value of such property, and in no event for more than 10% of the total amount of insurance under this policy or $25,000, whichever is the lesser.
*377 The insurance company contends  and the trial judge found  that the phrase, "the property of the Insured," excludes leased equipment from the additionally acquired property provisions of paragraph 9; that the language is clear and unambiguous. Since it is undisputed that the equipment in question was leased and as yet unscheduled  although still within the 30-day reporting period  such an interpretation compelled a determination of noncoverage.
The insurance company has described this policy as a "Contractors' Equipment Floater (Broad Form)," and a fair reading suggests that it is intended to furnish a contractor with coverage with respect to all the equipment he uses. The policy as a whole ties coverage to use. Ownership does not appear to be significant. Thus paragraph 1 includes property owned by others but held by the insured, while paragraph 2 excludes property owned by the insured but leased to others. Even as to after-acquired leased property, the insurance company concedes it can be added to the schedule and will thereafter be covered. This right to add leased equipment and, indeed, the premium rate with respect to such after-leased equipment is provided for in paragraph 9  so to that extent even American reads paragraph 9 to include leased equipment. The insurance company will be held to a fair reading of the policy; the insured will obtain the coverage he reasonably expected. See Sachs v. Commerical Ins. Co., 119 N.J. Super. 226 (Law Div. 1972), aff'd o.b. 124 N.J. Super. 258 (App. Div. 1973). Such a fair reading of paragraph 9 suggests that the category of property referred to therein is the same as the category of property covered by paragraph 1. It is difficult to attribute a meaning to paragraph 9 which would exclude leased equipment.
Our examination of the policy leads us to the conclusion that paragraph 1 is the sole coverage clause and that paragraph 9, rather than being an exclusionary clause, merely sets forth the methodology for handling after-acquired equipment  of the class or classes described in *378 paragraph 1. Paragraph 9 not only extends coverage to unscheduled paragraph 1 equipment during the period given the insured to have that equipment scheduled, but obligates the insured to notify the company and to pay premiums from day one.
* * * In consideration of this extension the Insured agrees to report such additions within thirty (30) days from the date acquired and to pay premium thereon from the date acquired at pro-rata of the policy rate. * * * [Par. 9]
American's contention that such an interpretation would permit the insured to enter into short-term equipment leases and thereby avoid premium ignores the contractual obligation of the insured. As in Nat'l Union Fire Ins. Co. v. Falciani, 87 N.J. Super. 157 (App. Div. 1965), upon lease of equipment the insured became liable for an additional premium.
If nothing else, the phrase, "the property of the Insured," in paragraph 9 is at least ambiguous. Where a policy is ambiguous, it will be construed in favor of the insured. Butler v. Bonner & Barnewall, Inc., 56 N.J. 567 (1970); Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504 (1965).
In view of this determination, it is unnecessary to consider the other issues raised on appeal.
Reversed and remanded for entry of judgment in favor of Tomae and Brounell against American.
MICHELS, J.A.D. (dissenting).
I respectfully disagree with the majority in this case. In my view the judgment of the Law Division should be affirmed. I have carefully reviewed the entire record in the light of the contentions of the third-party defendant insurance broker Brounell, Kramer and Waldor (Brounell). I find that the policy of insurance issued by third-party defendant The American Insurance Company (American) to defendant and third-party plaintiff A. Tomae & Sons, Inc. (Tomae) did not provide coverage *379 for the unscheduled contractors' equipment owned by plaintiff Fenwick Machinery, Inc. (Fenwick) but leased to Tomae.
Paragraph 9 of the Contractors' Equipment Floater provides coverage only for additionally acquired property owned by insured. The phrase, "the property of the Insured," in clear and unambiguous language so limits the coverage by any fair reading. Leased property is covered under The American Contractors' Equipment Floater only when the property is set forth in a schedule on or attached to the policy. While American concedes that after-acquired leased property may be added to the schedule which thereafter results in its coverage, such equipment is not automatically covered for 30 days as after-acquired property owned by the insured would be. As a matter of fact, American does not issue a policy which provides for 30-day automatic coverage on after-acquired leased property.
Therefore, I am satisfied that the trial judge properly denied Brounell's motion for summary judgment. The partial summary judgment in favor of American was also proper on the ground that the Contractors' Equipment Floater it issued did not provide coverage for the unscheduled contractors' equipment owned by Fenwick and leased to Tomae after the attachment date of the policy.
Furthermore, I am satisfied that there was ample evidential support in the record for the trial court's findings and conclusions that Brounell was negligent in the issuance of the Contractors' Equipment Floater to Tomae; as a result thereof American became liable to Tomae under the doctrine of respondeat superior, and American was entitled to be indemnified by Brounell for all sums it was compelled to pay Tomae as a result. There is no justification for disturbing these findings and conclusions. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974); State v. Johnson, 42 N.J. 146, 162 (1964).
Since liability was visited upon American solely by virtue of the tortious conduct and misrepresentation of its broker *380 Brounell rather than any contractual understanding, American was entitled to indemnification by Brounell. The principle is firmly embedded in our law that
A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability. [Restatement, Restitution, § 96 at 418 (1937)]
See also, Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55 (1960); Male v. Acme Markets, Inc., 110 N.J. Super. 9, 12 (1970); Public Service Elec. and Gas Co. v. Waldroup, 38 N.J. Super. 419, 430-432 (App. Div. 1955).
Moreover, there is no merit in the argument that American was not entitled to indemnification because it sustained no loss or damage since it would have issued the proper coverage if requested. Contrary to Brounell's claim, there is nothing in the record to support a finding that American offered the public this type of coverage. As a matter of fact, American's counsel has repeatedly asserted in the brief filed with this court that American did not write a policy which provides for automatic coverage for unscheduled after-acquired leased contractors' equipment.
Accordingly, I would affirm the judgment of the Law Division substantially for the reasons expressed by Judge Bedford in his oral opinion of January 17, 1976.