180 N.J. Super. 416 (1981)
434 A.2d 1160
JOSEPH P. STUDZINSKI, PLAINTIFF,
v.
THE TRAVELERS INSURANCE CO., DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
MOTOR CAR INSURANCE CO., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division Middlesex County.
Decided June 29, 1981.
*417 Aaron G. Greenberg for plaintiff.
*418 Peter W. Sachs for defendant and third-party plaintiff (Sachs & Sachs, attorneys).
KEEFE, J.S.C.
The issue to be decided is whether defendant insurance carrier had the right to cancel plaintiff's entire coverage when plaintiff had fully paid the premium on the original policy but had failed to complete premium payments due on a subsequent endorsement. The question has not been previously addressed by the courts of this State. The case was submitted on a stipulated set of facts upon which the court heard oral arguments.
The original insurance policy covering a 1977 Dodge van, was issued on November 29, 1977, for a term of one year. The premium was to be paid in installments. Application for this assigned risk automobile liability policy was through the third-party defendant, Motor Car Insurance Co. (hereinafter MCI), and assigned to Travelers Insurance Co. (hereinafter Travelers). It was served with process but has filed no answering pleadings. It is not a party to the stipulation and no relief is sought against it at this time.
Sometime after November 29, 1977, and before October 2, 1978, plaintiff moved and did not notify Travelers of the change of address. On January 9, 1978, plaintiff requested an endorsement to the policy extending coverage to include a 1971 Oldsmobile. At that time plaintiff paid an additional premium of $78 toward the endorsement. Although plaintiff made no further payment in connection with the endorsement, plaintiff continued to make payments on the original premium installments.
Sometime after the 1971 Oldsmobile was added to the insurance policy, plaintiff was sent a premium notice, showing an installment premium due in the amount of $112.80, and a due date of May 19, 1978. This premium notice was sent to plaintiff's original address. When this payment was not received by Travelers, a notice of cancellation of the policy was issued on June 9, 1978. The notice of cancellation was also addressed to *419 plaintiff's original address, and provided for an effective date of cancellation of June 29, 1978. Plaintiff did not receive either the statement of the additional premium owed or the notice of cancellation.
On August 22, 1978, defendant issued a draft in the amount of $212.10 representing the unearned premium for the cancelled insurance policy. This draft was issued to the order of Motor Car Insurance Agency, and in due course was deposited by MCI.
On November 3, 1978 Studzinski reported to the Newark, New Jersey, Police Department that the Dodge Van was stolen. As of that time Studzinski believed that he was still insured by Travelers.
The premium for insurance coverage of the Dodge Van was $472 which was paid in full by plaintiff. The additional premium for the add-on Oldsmobile was not paid in full.
At the outset the court notes that Travelers met the procedural requirements for cancellation. Plaintiff had a duty under the policy to notify Travelers of his change of address. Absent notification, Travelers' notices to plaintiff were correct. Under N.J.S.A. 17:29C-10 "cancellation may be effective whether or not the insured has actually received the notice of cancellation since proof of mailing, not proof of receipt is the determinative factor." Weathers v. Hartford Ins. Group, 77 N.J. 228, 234 (1978).
An insurance company is to be held to a fair reading of the policy, enabling the insured to obtain the coverage he reasonably expected. Fenwick Machinery, Inc. v. A. Tomae & Sons, Inc., 159 N.J. Super. 373 (App.Div. 1978). Plaintiff's expectation of coverage here is reasonable only if the subsequent endorsement is severable from the original policy.
Whether a contract is entire is a mixed question of fact and law. It depends on the intentions of the parties, to be ascertained from the circumstances surrounding the agreement and contract itself. A contract is entire when the promise of *420 one party is conditioned on the entire performance of the contract by the other, and is divisible when the part to be performed by one party consists of several distinct and separate items respecting which the consideration is apportioned to each item or is left to be implied in law. Rothman Realty Corp. v. Machain, 16 N.J. Super. 280 (Ch. 1951), aff'd 21 N.J. Super. 172 App.Div. 1952); Riddlestorffer v. Rahway, 82 N.J. Super. 423 (Law Div. 1964). The essential inquiry is whether there was a single assent to a whole transaction involving several kinds of property or a separate assent to each of several things involved. Dixon v. Smyth Sales Corp., 110 N.J.L. 459 (E. & A. 1933).
Although the question of divisibility in regard to an automobile liability policy has never been decided by our courts, a similar analysis arose in the context of a group insurance policy. In Riddlestorffer v. Rahway, supra, the court found that the parties intended the contract to be severable where consideration was separately apportioned among the insureds and each person was considered to be a distinct and separate risk.
Our neighboring courts in New York, however, have directly addressed the issue at bar. In Nationwide Mut. Ins. Co. v. Mason, 37 A.D.2d 15, 322 N.Y.S.2d 164 (App.Div. 1971), where the insured had fully paid on the original policy prior to adding the endorsement coverage of a second automobile, the court found that the breach of payment affected only the subsequent endorsement policy. In denying the insurance carrier's right to cancel the entire policy the court noted:
Here, too, the premium for each risk, one for the Buick and the other for the Chevrolet, is "separately fixed" and therefore, since "the policy in suit is severable and divisible", Lumbermens could only cancel that part of the risk assumed by it for which the premium had not been paid, i.e., on the Chevrolet [at 168].
The facts in the instant action vary only slightly from the facts in the New York case. In this case the insured had not completed the installment payments due under the original policy prior to the requested endorsement, whereas the insured had completed payment before the endorsement in the New *421 York case. However, payments made by plaintiff subsequent to the endorsement in this case were clearly intended to apply to the original premium charge as is evidenced by the checks that were issued to MCI.
Likewise, Travelers' conduct in this matter clearly indicates an intention to allocate premium payments to the initial premium rather than on account for both premiums. For example, the premium notice issued by Travelers showed the premium charged for the endorsement to be $212, with an allocation of credit for $78 paid on deposit and a balance of $134 due by May 19, 1978. In addition, on June 9, 1978 Travelers' cancellation notice stated that the reason for cancellation to be effective on June 29, 1978 was for nonpayment of the endorsement balance of $134. Thus, although plaintiff made several payments after he requested the endorsement in January 1978, Travelers did not apply those payments to reduce the total premium due on the policy, as it could have, but rather treated the endorsement as a separate undertaking both by the insured in terms of payment and by it in terms of identifying a separate risk.
The noted allocation of payment distinguishes this case from a situation where partial payment is made on a policy which, when issued, covered two separate automobiles. In that case cancellation for nonpayment of the balance due would properly be against the entire policy, absent an agreement to the contrary. Our courts will not construe partial payment to create pro rata coverage of time or properties. A partial payment is no better than no payment. Hudson v. Knickerbocker Life Ins. Co. of New York, 28 N.J. Eq. 167, 172 (Chancery 1877).
In finding that Travelers did not have the right to cancel the entire policy where the breach went to a divisible part of the contract, this court notes that public policy supports a finding to the greatest extent possible in favor of coverage where two interpretations may be had in an ambiguous situation. Concoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234 (App.Div. 1975).
*422 No unreasonable burden is being put on the insurer here to apportion premium payments or impose liability on the insurer solely upon an insured's subjective statement as to how he intended the premium payments to be allocated. The insured, not having received the bill for the added premium, could not have intended to make any payments other than on the original premium, while the defendant insurer chose to allocate premium payments to the original premium charge rather than to the total premium charge.
Judgment will be entered in favor of plaintiff. It was stipulated that the damages sustained by reason of plaintiff's loss was $7,178.29 less a $100 deductible, or $7,078.29. In addition, defendant is entitled to a credit for the unearned premium of $212.10 which was returned to plaintiff upon cancellation of the policy. Plaintiff will therefore submit an order of judgment in the amount of $6,866.19.