### In the Matter of T & H DINER, INC., t/a Colonial Restaurant & Diner, Debtor.

### Civ. No. 89–3651 (CSF).

United States District Court, D. New Jersey.

Dec. 20, 1989.

Carol Slocum, Klehr, Harrison, Harvey, Branzburg, Ellers & Weir, Cherry Hill, N.J., for Trustee.

Daniel Chase, Teich, Groh & Frost, Trenton, N.J., for the Landlords.

Richard B. Honig, Hellring Lindeman Goldstein Siegal Stern & Greenberg, Newark, N.J., for debtor.

CLARKSON S. FISHER, District Judge.

This is an appeal from the bankruptcy court over which the court has jurisdiction pursuant to 28 U.S.C. § 158(a). The debtor, T & H Diner, Inc., trading as the Colonial Restaurant & Diner, seeks to set aside an order of the bankruptcy court which denied its motion to assume a certain sublease. For the reasons set forth below, this matter will be remanded to the bankruptcy court for additional findings of fact.

*Facts*

On April 5, 1989, the debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. The debtor operated a diner and restaurant located on a major highway in Lawrence Township, New Jersey. The facility sits on

a parcel of land which the debtor subleased from Constantinos Placiotis, Catherine Placiotis, his wife, and Limberus Placiotis, his brother ("the landlords").[1]

The arrangement under which the debtor came into possession of the premises was finalized on November 20, 1980. The parties executed several interrelated contracts under which the debtor sublet the property and purchased a restaurant operating on the premises.

Under the purchase agreement the debtor was to pay $1,000,000 for the restaurant facility, its equipment and its goodwill. The money was to be paid over time, as the debtor executed one hundred and twenty promissory notes due in successive months.

The lease agreement had a term of forty-eight years, commencing December 1, 1980. Every four years $500 was added to the monthly base rent of $2,500. Thus, when the lease expired in the year 2028, the monthly rent would be $8,000.

The lease and purchase agreements specifically referenced each other. Paragraph 35 of the lease provided that any "defaults with respect to any of the notes given by [the debtor to the landlord] in connection with the purchase of the restaurant building located on the demised premises herein ... shall be deemed a default by [the debtor] under this sublease." Likewise, the purchase agreement, in paragraph 16, provided that any default on the notes "shall also be deemed a default by [the debtor] under [the] sublease." A similar default provision is also found in paragraph 13 of the purchase agreement.[2]

On May 5, 1989, one month after it had filed for bankruptcy, the debtor moved to assume the lease agreement. The debtor candidly admits that it was in default with regard to certain provisions in the lease. Rent was overdue, and sewer and tax bills were unpaid. The bankruptcy court required that these items be paid prior to its consideration of the motion to assume.

Although rent, sewer and tax payments were made, the landlords still claimed that the debtor was in default. In particular, the landlords directed the bankruptcy court to the provisions in the lease which referenced the notes due on the purchase agreement. It is undisputed that the debtor was in default on the notes. The landlords argued that the debtor was therefore in default under the lease, since default on the notes is deemed to be a default on the lease. *See* Lease Agreement, ¶ 35. The debtor claimed that the purchase and lease agreements were divisible contracts. The court found for the landlords:

I find that [the lease and purchase agreements] were all part of one contract, having reviewed all of the instruments and the evidence regarding the [parties'] intention. But even if I did not so find, the sub-lease specifically states that a default under the notes will be a default under the sub-lease. And Code Section 365[d] says that one may not assume a lease unless one cures all defaults.

Since the sub-lease says what it says in that regard, [ ] absent evidence to the contrary of modification or other [parol] evidence, that provision that the defaults under the notes would be part of the defaults under the sub-lease, was the intention of the parties at the time they signed the sub-lease. And that being the case, the debtor would have to cure such defaults in order to—under the notes as well in order to assume the lease under Code Section 365.

Transcript of Hearing at 23–24 (July 10, 1989).

The landlords also argued that the debtor was in default for its failure to procure insurance as required in paragraphs 12 and

---

1. Title to the land is held by Marcal Development Corporation, who leased the property to the American Diner & Restaurant, a New Jersey corporation, for ninety-eight years. The American Diner & Restaurant sublet the property to the landlords, who, in turn, sublet the property to the debtor.

2. Paragraph 13 provides, in pertinent part, that a default on any of the notes triggers the landlords' right to terminate the sublease.

31 of the lease agreement.[3] The debtor argued that it need not procure such insurance, since the landlord already was insured. The bankruptcy court again found for the landlords:

> The debtor has not provided proof of insurance as required by the sublease.... I find that the obligation to maintain insurance is a ... continual obligation of the debtor that "arises" within the meaning of [Bankruptcy] Code § 365(c)—or (d)(3), daily. That any lapse in insurance is a default under the sublease....

*Id.* at 24–25.

In this appeal the debtor argues that both of these issues were wrongly decided. The debtor, who has boarded up the premises and stopped doing business, also argues that the bankruptcy court improperly refused to consider certain evidence and should not have vacated the automatic stay, 11 U.S.C. § 362.

The debtor applied to the bankruptcy court for a stay pending this appeal. Rule 8005. This application was denied. Although the Bankruptcy Rules permitted the debtor to apply for a stay in this court, such a request was never made. The landlords, who were thus unfettered by any stay, arranged to have the lease sold to a third party. The lease is the debtor's principle asset.

This matter was scheduled for argument on December 4, 1989. On November 30, 1989, counsel for the landlords requested that the matter be adjourned until the next motion day. On December 1, 1989, the court assented to such an adjournment as the landlords had received consent from the debtor's attorney. One week later the court was advised that the property had been leased to a third party. Chase Affidavit at ¶ 5 (the new lease was finalized on December 6, 1989).

The landlords now argue that since the sole asset involved in this appeal has been disposed of, the appeal has been rendered moot. Counsel for the debtors contend oth-

erwise. As the question of mootness is naturally a threshold consideration, the court must make it its initial inquiry.

*Mootness*

■ The landlords argue that this appeal is mooted by their sale of the lease to a third party. Landlords' Brief at 2. In that regard, the landlords direct the court to 11 U.S.C. § 363(m) and Bankruptcy Rule 8005. The court finds the landlords' arguments unpersuasive.

Initially, reliance on § 363(m) is misplaced as that section concerns the sale of property by the trustee or debtor to a good faith purchaser. In this matter the debtor's leasehold interest was sold *by the landlord* to a third party. Section 363(m) specifically refers to sales authorized under sections 363(b) and 363(c), which permit the trustee to sell the debtor's property under certain circumstances. *In re Sewanee Land, Coal & Cattle, Inc.,* 735 F.2d 1294 (11th Cir.1984). Indeed, it applies "only to the sale of the debtor's property by the trustee pursuant to [those sections]." *Miami Center Ltd. Partnership v. Bank of New York,* 838 F.2d 1547, 1553 (11th Cir. 1988), *cert. denied,* — U.S. ——, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988).

The landlords' sale of the debtor's leasehold interest was not pursuant to sections 363(b) or 363(c). Indeed, neither the trustee nor the debtor was at all involved in the disposition of the property. Accordingly, § 363(m) is inapplicable to the instant transaction.

■ The landlords also point to Bankruptcy Rule 8005, entitled "Stay Pending Appeal." Pursuant to this rule an aggrieved party may apply to the bankruptcy court or this court for a stay pending its appeal. An appellant is not obligated to seek a stay pending appeal. *In re Highway Truck Drivers & Helpers Local #107,* 888 F.2d 293 (3d Cir.1989). Failure to do so, however, places the appellant in jeopardy as the "prevailing party may treat the judgment or order of the bankruptcy judge as

---

**3.** Such insurance was also required under the purchase agreement. *See* Purchase Agreement,

¶ 14.

final, notwithstanding that an appeal is pending." Collier *Bankruptcy* ¶ 8005.03 (1989). If events transpire during the pendency of the appeal which prevent the appellate court from granting effective relief, the appeal will be dismissed as moot. *See In re Cantwell*, 639 F.2d 1050 (3d Cir.1981).

 The landlords argue that their releasing of the premises automatically renders this appeal moot. This is not so. An appeal will be dismissed as moot only where the reviewing court is prevented from granting any effective relief. *See e.g., In re Highway Truckers*, 888 F.2d 293 (3d Cir.1989) (state court ruling prevented district court from granting any effective relief); *In re Kahihikolo*, 807 F.2d 1540 (11th Cir.1987) (court is powerless to grant relief where creditor conducts a foreclosure sale pursuant to a bankruptcy court order which had not been stayed); *In re Roberts Farms*, 652 F.2d 793 (9th Cir.1981) (appeal moot where plan had been so far implemented that it was impossible to fashion effective relief for all parties). Here, it is not impossible to grant effective relief on appeal.

The debtor filed a *lis pendens* on the property. The effect of that filing is "constructive notice of a pending action concerning that real estate, and a purchaser or mortgagee takes subject to the outcome of the lawsuit." *Trus Joist Corp. v. Treetop Associates, Inc.*, 97 N.J. 22, 31, 477 A.2d 817 (1984). Indeed, the "notice is designed to protect the alleged interest of the litigant in the realty." Note, *Lis Pendens: A Legislative Response to a Judicial Invitation*, 7 Seton Hall Legis.J. 59 (1983). The entity which purchased the debtor's lease, therefore, takes possession subject to the ultimate outcome of this dispute. Accordingly, the debtor is not left without a remedy. As noted in Collier, *supra,*

> The appellant does not lose the right of appeal merely because the judgment has been executed or otherwise acted upon if effective relief can be recused following reversal. [¶ 8005.05]

If the debtor ultimately prevails, the *lis pendens* enables the court to craft a reme-

dy. The court will, therefore, examine the proceedings below.

It should also be noted that a dismissal of this matter on mootness grounds would be manifestly inequitable. The lease is the debtor's principle asset. By virtue of its sale, the landlords seek to individually reap a disproportionate share of the debtor's estate. Other creditors are effectively left without a remedy. The court is reluctant to permit such an occurrence, especially in light of the fact that the landlords re-leased the property a few days after the matter was adjourned at their request. Under these circumstances, the court finds it unfair, perhaps even manipulative, for the landlords to seek the court's indulgence for an adjournment and then argue that the action has been rendered moot.

*Standard of Review*

The bankruptcy rules set forth this court's role in reviewing the proceedings below.

> On appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous....

Bankruptcy Rule 8013. *See also In re Morrissey*, 717 F.2d 100, 104 (3d Cir.1983). Conclusions of law are accorded plenary review. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988).

*Discussion*

The Bankruptcy Code permits a trustee, or debtor in possession, 11 U.S.C. § 1107, to "assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). As originally enacted, § 365 allowed the debtor to assume or reject any unexpired lease "at any time before confirmation of a plan." This enabled the debtor to exercise considerable discretion and expend a great deal of time in making a determination as to whether it would assume or reject a lease. Frequently the debtor's dilatory approach resulted

in frustration and expense for landlords. *See* 130 Cong.Rec. §§ 8891, 8894–95 (daily ed. June 29, 1984) (remarks of Sen. Hatch), *reprinted in* 1984 U.S.Code Cong. & Admin.News 576, 590, 598–99.

In 1984, Congress responded to the concerns of landlords when it enacted the Bankruptcy Amendments and Federal Judgeship Act. Pub.L. No. 98–353, 98 Stat. 361 (July 10, 1984). The Act shortened the time within which a chapter 11 debtor could assume or reject an unexpired lease of nonresidential real property.[4] In addition, the Act required the debtor to perform all lease obligations in a timely manner while deciding whether to assume.[5]

Section 365(d)(3) provides that the lessee must perform all obligations under the lease in a "timely" fashion. The Code, however, does not expressly state what consequences follow from the debtor's failure to comply. *In re Southwest Aircraft Services, Inc.,* 831 F.2d 848, 853 (9th Cir. 1987), *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988); *In re Westview 74th Street Drug Corp.,* 59 B.R. 747 (Bkrtcy.S.D.N.Y.1986). Since the Code does not state that the debtor's failure to pay its obligations results in forfeiture of its rights under the lease, courts have been reluctant to engraft such a harsh penalty onto § 365(d)(3). *See Westview,* 59 B.R. at 754. Instead, it has been found that

> Congress intended the bankruptcy courts to have the discretion to consider all of the particular facts and circumstances involved in each bankruptcy case and to decide whether the consequence of a violation of subsection (d)(3) should be a forfeiture of the assumed lease, some other penalty, or no penalty at all.

*Southwest Aircraft,* 831 F.2d at 854. Thus, the bankruptcy court has discretion in considering how to proceed if the debtor fails to meet its obligations under the lease. *See In re Orvco, Inc.,* 95 B.R. 724 (9th Cir. BAP 1989); *Westview,* 59 B.R. at 754.

In this matter the bankruptcy court required that the debtor be current on its rental obligations before the court would consider its motion to assume. In that regard, the debtor paid overdue rent, tax and sewer charges; however, the court found that the debtor was still in default under the lease.

The Code states that the debtor *shall* timely perform *all* of its obligations under the lease. 11 U.S.C. § 365(d)(3). Thus, debtors are required to pay rent and other charges pending their decision to assume. *See In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 973 (Bkrtcy.E.D. Pa.1987). When the debtor moved to assume its lease it had not made the March and April payments on its promissory notes.[6] The lease requires that those payments be made in order to avoid a default under the lease. The debtor argues that the lease and purchase agreements are divisible contracts which may be assumed or rejected separately.

The question of divisibility is a matter of state law. *In re Gardinier, Inc.,* 831 F.2d 974 (11th Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 140, 102 L.Ed.2d 112 (1988). In New Jersey the determination of whether a transaction constitutes one or several contracts is primarily based upon the intentions of the parties. *Rothman Realty Corp. v. MacLain,* 16 N.J.Super. 280, 84 A.2d 482 (Ch.Div.1951), *aff'd,* 21 N.J.Super.

---

**4.** With regard to the amount of time given to debtors to either assume or reject an unexpired lease, 11 U.S.C. § 365(d)(4) provides, in part, that

> [I]f the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

**5.** Pursuant to 11 U.S.C. § 365(d)(3), the debtor must perform all obligations under the lease until it decides to assume or reject:

> (3) The trustee shall perform all of the obligations of the debtor, except those specified from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected....

**6.** The May and June payments were overdue and unpaid when the bankruptcy court conducted the hearing on debtor's motion to assume on July 10, 1989.

172, 91 A.2d 101 (App.Div.1952). The intent of the parties "is to be gathered from the language and subject matter of the agreement." *Riddlestorffer v. City of Rahway*, 82 N.J.Super. 423, 428, 197 A.2d 883 (Law Div.1964). In addition, intent can "be gathered from all the circumstances surrounding the agreement and from the face of the contract, if [it is] in writing." *Dixon v. Smyth Sales Corp.*, 110 N.J.L. 459, 166 A. 103 (E. & A.1933).

The debtor primarily relies upon *Rothman, supra,* and *Studzinski v. Travelers Ins. Co.*, 180 N.J.Super. 416, 434 A.2d 1160 (Law Div.1981), in support of its conclusion that the lease and purchase agreements are divisible; however, those cases are distinguishable from this case in that the contracts therein were neatly severable. In this matter the lease and purchase agreements are inextricably intertwined. The lease of the land and the sale of the business operating on that land are not, in the instant matter, divisible agreements. *See In the Matter of Easthampton Sand & Gravel Co., Inc.*, 25 B.R. 193 (Bkrtcy.E.D. N.Y.1982).

In *Easthampton* the bankruptcy court was confronted with a situation analogous to the one before this court. The lessor executed an agreement with the debtor whereby it leased a certain piece of property and sold a concrete manufacturing business operating thereon. The balance due on the sale of the business was evidenced by a promissory note payable over eight years. The lease provided, in part, that a default on the note or any of the other documents executed simultaneously with the lease would be deemed a material default in the lease. 25 B.R. at 196.

The court considered whether the lease could be assumed independently of the note obligation and found that it could not. *Id.* at 198. It noted that

[t]he lease is part and parcel of the unified transaction whereby the creditor sold its concrete manufacturing business to the debtor. The documents were executed simultaneously and are replete with language indicating that a default

on the note would be considered a default on the lease. . . .

*Id.* at 199. The court recognized that, while it had the equitable power to modify lease provisions for the benefit of the estate, it could not give "countenance [to] the debtor's exercise of § 365 to relieve itself of conditions which are clearly vested by the contracting parties as an essential part of their bargain." *Id.* at 198.

In this matter the parties simultaneously executed several documents on November 20, 1980, which transferred the restaurant and diner from the landlords to the debtor. Each of the documents references the others. For example, the lease agreement specifically provides that any default on the notes constitutes a default under the lease. In the purchase agreement, paragraphs 13, 14 and 15 speak of the interrelationship between sale and lease agreements. The parties to this sophisticated transaction were cognizant of the shared language. The notes and the lease were integral parts of a single transaction which transferred the entire restaurant and diner, the land upon which it operated, its equipment and goodwill to the debtor.

The essential inquiry in determining the divisibility of a transaction is "whether there was a single assent to a whole transaction involving several kinds of property or a separate assent to each of the several things involved." *Studzinski*, 180 N.J.Super. at 420, 434 A.2d 1160. The bankruptcy court found the instant transaction to be the former. This court agrees.

■ The court finds that the lease and sale agreements form one indivisible transaction. Thus, the debtor's failure to make the note payments would constitute a default under the lease. This incurred default precludes assumption of the lease as the debtor has failed to comply with 11 U.S.C. § 365(d)(3) which requires the debtor to timely perform *all* of its obligations under the lease until it is assumed.

The bankruptcy court also found that the debtor was in default because it did not fulfill its obligation to secure insurance under the lease. Indeed, the debtor admits that it did not obtain insurance "coverage

as contemplated by the sublease." Debtor's Moving Brief at 10. Nevertheless, the debtor argues that it was relieved of its obligation to obtain insurance because the landlords had already procured coverage.

The debtor directs the court to paragraph 16 of the lease agreement. That section provides that if the debtor fails to comply with any provision of the lease agreement, the landlords, if they so elect, may perform the lessee's obligations and seek reimbursement for their expenditures. The record reveals that the landlords did obtain insurance coverage; however, it seems that they may not have secured so much coverage as was required of the debtor under the lease. The record in this regard is somewhat unclear. It seems as though both the landlords and the debtor may have had some insurance on the premises.

In any event, it is clear that insurance had lapsed in the past. The bankruptcy court characterized the debtor's conduct with respect to its obligation to obtain insurance as "egregious," especially in light of the fact that the landlords were exposed to personal liability, as an individual was allegedly injured on the uninsured premises. Notwithstanding previous lapses, any default with regard to insurance coverage would be simply an additional obligation that the debtor failed to timely perform. *See* 11 U.S.C. § 365(d)(3). Since the debtor has defaulted on its obligation under the lease to pay on the notes, an additional default with regard to insurance is not critical. Section 365(d)(3) requires the debtor to timely perform all of its obligations under the lease.

Nevertheless, the insurance issue cannot be lightly disregarded as it also directly impacted the bankruptcy court's decision to vacate the stay. The bankruptcy court held that

the failure to provide insurance, complete insurance, and to name [the landlords] as a named insured, is failure of adequate protection as in the meaning of Code Section 362(d)(1).

Transcript at 25 (July 10, 1989). Accordingly, the court vacated the automatic stay.

*Id.* The debtor argues that lifting the stay was erroneous.

Section 362(d) sets forth two requirements for granting relief from the stay: the movant must be a real party in interest, and there must be cause. Although the Code does not define "real party in interest," the landlords herein certainly qualify. *See In re Comcoach Corp.*, 698 F.2d 571 (2d Cir.1983). With regard to cause, the bankruptcy court cited the lack of insurance. The issue of insurance coverage, as previously noted, is hardly precise.

The debtor's attorney argued that there may have been sufficient coverage. She submitted an untimely affidavit which may have addressed the issue, but the bankruptcy court refused to consider it. This court takes no issue with that decision insofar as it impacts upon the question of whether the debtor was in default; however, with regard to the apparent inadequate protection under 11 U.S.C. § 362(d)(1), the bankruptcy court should have considered the affidavit. The lack of insurance was identified as the cause "shown to vacate the automatic stay." Therefore, this matter will be remanded to the bankruptcy court for specific findings with regard to the vacation of the automatic stay. 11 U.S.C. § 362(d).

This matter having come before the court on motion of the debtor, T & H Diner, Inc., trading as the Colonial Restaurant & Diner, to set aside an order of the bankruptcy court which denied its motion to assume a certain sublease; and the court having read and considered the written submissions of counsel; and good cause appearing,

IT IS on this 20th day of December 1989

ORDERED that the motion to set aside the order of the bankruptcy court be and hereby is denied; and it is further

ORDERED that this matter be and hereby is remanded to the bankruptcy court for further proceedings in accordance with this court's opinion filed this date.