In re HOLYWELL
CORPORATION, Debtor.

HOLYWELL CORPORATION,
Plaintiff–Appellant,

v.

BANK OF NEW YORK,
Defendant–Appellee.

No. 89–5028.

United States Court of Appeals,
Eleventh Circuit.

May 18, 1990.

Robert M. Musselman, Charlottesville, Va., for plaintiff-appellant.

Vance E. Salter, Barry R. Davidson, S. Harvey Ziegler, Herbert Stettin, Miami, Fla., for defendant-appellee.

Before TJOFLAT, Chief Judge, TUTTLE, and RONEY *, Senior Circuit Judges.

TUTTLE, Senior Circuit Judge:

This is an appeal from an order of the district court dismissing as moot an appeal from the bankruptcy court's decision determining the amount, validity and extent of a creditor's lien. Appellants primarily seek to challenge the interest rate used to calculate the amount of the lien.

## I.  STATEMENT OF THE CASE

Appellants are four Chapter 11 debtor companies and one individual Chapter 11 debtor, Theodore B. Gould, who owns, controls or dominates the four companies. Appellee, the Bank of New York ("the Bank"), lent the debtors funds to finance the construction of a thirty-five story hotel, office and shopping complex in downtown Miami, Florida. The Bank's loans to the debtors amounted to over $196,711,481 and were secured by mortgages. When the loans fell into default, the Bank began foreclosure, and the debtors filed voluntary petitions for bankruptcy.

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

On February 11, 1985, the Bank, which is the debtors' largest secured creditor, filed an adversary proceeding to determine the amount, validity and priority of the Bank's lien against the debtors' property. The debtors moved for a stay of the adversary proceeding filed by the Bank, because of a prior pending action commenced by the debtors against the Bank in the district court, and for an order of withdrawal of the reference. The bankruptcy court denied both motions.

A hearing was held in the adversary proceeding on March 14, 1985. On March 20, 1985, the bankruptcy court issued a memorandum decision and entered a judgment fixing the total lien of the Bank to that date, including default interest from February 1, 1984, at $234,342,742.93. The bankruptcy court determined that "[a]ccrued interest on the loans, determined by the Bank at the 'contract' (good standing) rate, to March 14, 1985 is $33,103,184.24, and is secured by the Bank's mortgages." *Bank of New York v. Gould*, 49 B.R. 694 (Bankr.S.D.Fla.1985). The debtors filed a motion for rehearing, which the bankruptcy court denied. The debtors appealed to the district court but did not seek a stay pending appeal.

Meanwhile, the parties proposed competing reorganization plans. The five related or affiliated debtors submitted almost identical plans of reorganization. The plan offered by the Bank involved the Bank's purchasing the property with the improvements thereon for a sum of approximately $255,600,000. The creditors overwhelmingly approved the Bank's plan and rejected the debtors' plans. The bankruptcy court accepted the plan proposed by the Bank and entered a confirmation order on August 8, 1985. The debtors appealed the confirmation order to the district court and moved for a stay pending appeal. The bankruptcy court conditioned the issuance of a stay upon the debtors' posting of a supersedeas bond, which they failed to do. The reorganization plan proceeded, and the Bank (or its designee) purchased the Miami property for $255.6 million.

The district court remanded the appeal from the confirmation order to the bankruptcy court for additional explicit findings of fact and conclusions of law. On remand, an evidentiary hearing was held at which evidence was adduced relating to the calculation of the amount of the Bank's lien, among other matters. The bankruptcy court again confirmed the Bank's plan of reorganization. The district court affirmed. *Holywell Corp. v. Bank of New York*, 59 B.R. 340 (S.D.Fla.1986). On appeal to this Court, the case was eventually remanded to the district court to be dismissed as moot, because the reorganization plan had already been substantially consummated. *Miami Center Limited Partnership v. Bank of New York*, 838 F.2d 1547 (11th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988).

As to the appeal to the district court from the bankruptcy court's order determining the amount, validity and priority of the Bank's lien, the district court dismissed the cause as moot on November 30, 1988, relying on the decision of *Miami Center*, 838 F.2d 1547. It is from this ruling that the debtors now appeal.

## II. FACTS

As part of the reorganization plan, the Bank purchased the property for $255,600,000, by cancelling the judgment lien it held in the amount established in the adversary proceeding in the bankruptcy court, by releasing some $30,000,000 of cash collateral it received as a prior lender from the sale of certain properties in Washington, D.C., that had been owned by several of the debtors, and by furnishing the remaining new cash (somewhere between $11,000,000 and $14,000,000) necessary to make up the purchase price.

Additional facts prompting this litigation have been recited in numerous other decisions. *See, e.g., Miami Center Limited Partnership v. Bank of New York, supra,* and *Holywell Corp. v. Bank of New York,* 59 B.R. 340 (S.D.Fla.1986).

## III. DISCUSSION

Appellants contend that the contract interest rate used to calculate the amount of the Bank's lien was excessive, because it was based on the Bank's published prime rate instead of the lower rate provided for in the contract. Appellants now seek to recover any excess, which appellants assert is estimated at $14 million to $15 million.

Three of the notes made to the Bank, for $23,000,000, $47,500,000 and $42,000,000, defined the contract rate as follows:

> The prime rate is the minimum commercial lending rate charged from time to time by the Bank of New York for 90-day loans to responsible and substantial commercial borrowers.

Appellants contend that the bankruptcy court erroneously accepted the Bank's unilateral determination of the contract rate. The bankruptcy court stated in its order of judgment:

> Accrued interest on the loans, determined by the Bank at the "contract" (good standing) rate, to March 14, 1985 is $33,103,184.24, and is secured by the Bank's mortgages. Based on a Prime Rate of 10.5% per annum, interest will accrue at $64,171.66 per day from March 14, 1985. Any change in the prime rate (whether up or down) will affect that daily interest figure.

Appellants contend that the ruling of this Court regarding the mootness of the appeal of the confirmation order does not preclude recovery of overcharged interest expenses.

The plan of reorganization was adopted under the assumption that the Bank would be permitted to rely upon the amount of interest the bankruptcy court found to be correct. There is no indication that the Bank would have agreed to purchase the project for $255,600,000 if it had realized it might subsequently be required to repay millions of dollars of excess interest to the debtors. It might be true that the notes called for a lower interest rate than that accepted by the bankruptcy court. However, the amount of the judgment lien was calculated using that interest rate, and the purchase price of the property was funded in substantial part by elimination of the mortgage lien. Altering the amount of interest would change the amount of the judgment lien, which in turn would modify the terms of the sale to the Bank, to which the Bank agreed.

This Court previously considered the debtors' allegation that the Miami property should be revalued to a higher figure and the sale price should be adjusted accordingly. *Miami Center*, 838 F.2d at 1555. The debtors recognized that the relief they sought could require the Bank to provide additional cash and "sweeten the pot." *Id.* at 1556. There, the Court stated:

> These prayers for relief must be set against what the bank bargained for, and received, as part of the reorganization plan, and the consequences to the plan of granting the prayers. The bank agreed to give up its judgment, calculated at closing at around $242 million. The amount due under the mortgage and brought forward into the judgment was calculated at "good standing" interest rates; by agreeing to this calculation the bank surrendered a claim to $5 million–$6 million of interest at default rates....
>
> Closing the sale to the bank stopped the running of interest at approximately $2 million per month....

> .    .    .    .    .

> The bank put up $12.5 million of its own money to make up the purchase price. It surrendered $30 million of cash collateral it was holding. These funds have been the primary source for payments to creditors and reserves totalling approximately $30 million. The trustee appeared before the district court when, after remand, it heard argument. He pointed out that he had paid some $14 million in claims, had reserved some $9 million for claims disputed or in litigation, and held some $8 million–$9 million in cash plus some $7 million in a reserve for contested taxes.

838 F.2d at 1556. The Court further noted: "The bank might, of course, not wish to become purchaser of the property at an elevated price...." *Id.*

More recently, in *In re Holywell Corp.,* 874 F.2d 780 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 725, 107 L.Ed.2d 744 (1990), several of the debtors contended that the bankruptcy court erred in concluding that title to furniture, fixtures and equipment (FF & E) passed to the liquidating trustee, who sold them to the purchaser as part of the $255.6 million sale. The Court stated:

> Passage of title of the FF & E to the liquidating trustee, however, was part of the confirmed plan of reorganization. We have already held that 'the plan ha[s] been substantially consummated ... and that it ha[s] become legally and practically impossible to unwind the consummation of the plan or otherwise to restore the status quo before confirmation.' The issue argued by appellants is therefore moot.

874 F.2d at 782 (citation omitted).

Here, the debtors again attempt to tamper with the terms of the sale of the property. This would strike at a crucial element of the reorganization plan. Since the debtors failed to post an appeal bond, the reorganization plan was implemented; the plan has been substantially consummated. The debtors' efforts again to require the Bank to "sweeten the pot" after this principal transaction, the sale of the property, has been completed must fail. The amount of interest established in the adversary proceeding in the bankruptcy court was included in the Bank's bargain for the purchase of the project, which constituted a large part of the confirmed plan. It is now impossible and unjust to amend the plan as consummated, and we are unable to fashion effective relief for all concerned, *see In re Roberts Farms, Inc.,* 652 F.2d 793, 797 (9th Cir.1981), *cited in Miami Center,* 838 F.2d at 1556. The district court properly dismissed the appeal as moot. We think the other contentions made by appellants are also without merit.

The order of the district court is AFFIRMED.