**In re DELAWARE AND HUDSON RAILWAY COMPANY,**
Debtor.

**MELLON BANK, N.A., Appellant, and New York State Department of Transportation, Appellant and Cross–Appellant,**

v.

**DELAWARE AND HUDSON RAILWAY COMPANY, and United States of America, Appellees.**

Civ. A. No. 91–115–JLL.

United States District Court,
D. Delaware.

June 19, 1991.

R. Judson Scaggs, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, Del.; Rudy A. Fabian of Reed, Smith, Shaw & McClay, Pittsburgh, Pa., of counsel, for appellant Mellon Bank, N.A.

Regina A. Iorii of Ashby, McKelvie & Geddes, Wilmington, Del.; Leona D. Jochnowitz, New York State Dept. of Transp., Albany, N.Y., of counsel, for appellant and cross-appellant New York State Dept. of Transp.

Joanne B. Wills of Morris, James, Hitchens & Williams, Wilmington, Del.; Charles H. White, Jr., and Bethany J. Vazzana of Hazel & Thomas, P.C., Washington, D.C., of counsel, for appellee Trustee of Delaware and Hudson Ry. Co.

Ellen W. Slights, Asst. U.S. Atty., Wilmington, Del; Alan E. Kleinburd, Dept. of Justice, Washington, D.C., of counsel, for appellee the U.S.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

On January 15, 1991, the United States Bankruptcy Court for the District of Delaware entered an order permitting the Trustee of the bankrupt Delaware and Hudson Railway Company ("D & H Railway") to assume D & H Railway's contracts with the State of New York and assign them to D & H Corporation ("DHC"),[1] which subsequently purchased D & H Railway's assets and undertook continued operation of its rail lines. The bankruptcy court's order also awarded certain amounts to New York State to compensate it for D & H Railway's defaults under the contracts, but left the amounts open to dispute by interested parties.

Mellon Bank, N.A. ("Mellon"), the principal private secured creditor of the D & H Railway, appeals the bankruptcy court's order authorizing assumption and assignment of the contracts and payment to New York for defaults under the contracts. Docket Item ("D.I.") 1. New York moves to dismiss Mellon's appeal as moot in one respect and interlocutory in another. D.I. 7. New York also appeals and cross-appeals aspects of the bankruptcy court's order regarding the amount it is entitled to receive as compensation for defaults under the contracts. D.I. 1.

For the reasons stated below, the Court will grant New York's motion to dismiss Mellon's appeal as moot and interlocutory. The Court will also refrain from reaching the merits of New York's appeal and cross-appeal as they, too, are interlocutory.

## FACTUAL BACKGROUND

A brief explanation of the Bankruptcy Code provisions relevant to this appeal is helpful to a proper understanding of the facts. The Code provides that a trustee in bankruptcy, subject to the bankruptcy court's approval, may assume and assign executory contracts of the debtor. 11 U.S.C. § 365 (1988). The purpose of § 365 is to allow a trustee to pick and choose among the debtor's agreements and assume those which benefit the estate and reject those which do not. *In re G–N Partners*, 48 B.R. 462, 465 (Bankr.Minn. 1985).

Section 365 provides if the debtor has defaulted under an executory contract, the trustee may not assume such contract unless the trustee promptly cures the default, compensates the other party to the contract for any actual pecuniary loss resulting from the default, and provides adequate assurance of future performance under the contract. 11 U.S.C. § 365(b)(1) (1988). Furthermore, a trustee may not assign an executory contract once assumed unless the assignee of such contract gives adequate assurance of future performance, whether or not there has been a default under the contract. 11 U.S.C. § 365(f)(2) (1988).

The Bankruptcy Code does not define the term, "executory contract," but generally courts, including the Third Circuit, have adopted the definition formulated by Professor Vern Countryman in his 1973 law review article on the subject:

> [An executory] contract [is one] under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.

1. DHC is a wholly-owned indirect subsidiary of Canadian Pacific Ltd.

Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973). *See, e.g., Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.,* 872 F.2d 36, 39 (3d Cir.1989).

The other Bankruptcy Code provision relevant to this appeal is 11 U.S.C. § 363 (1988), which outlines the conditions under which a trustee may sell all or substantially all of the debtor's assets. Section 363 provides, *inter alia,* that such sale must be preceded by notice and hearing, 11 U.S.C. 363(b)(1) (1988), and that, at the request of a party with an interest in the property to be sold, the court shall prohibit or condition the sale as is necessary to provide adequate protection of such interest. 11 U.S.C. 363(e) (1988). A reversal on appeal of an order authorizing the sale of all or substantially all of a debtor's assets does not affect the validity of the sale to a good faith purchaser, whether or not the purchaser knew of the pendency of the appeal, unless the order authorizing the sale was stayed pending appeal. 11 U.S.C. § 363(m) (1988). Thus, failure to secure a stay of an order authorizing a sale of assets renders moot an appeal of such an order because the appellate court, once the sale is consummated, cannot grant effective relief. *In re Charter Co.,* 829 F.2d 1054, 1056 (11th Cir.1987), *cert. denied sub nom. Cargill, Inc. v. Charter Int'l Oil Co.,* 485 U.S. 1014, 108 S.Ct. 1488, 99 L.Ed.2d 715 (1988).

From 1975 to 1985, the State of New York, through its Department of Transportation (hereinafter referred to interchangeably as "New York"), entered into a series of contracts with D & H Railway by which New York agreed to pay for and D & H Railway agreed to perform improvements to, *inter alia,* the track, signals, and locomotives of the D & H Railway system. D & H Railway also agreed to maintain the system for a certain period of time according to contractually-prescribed schedules.

The contracts provided that New York would retain title to any material or equipment purchased under the contracts during the period of D & H Railway's maintenance obligation, after which title would vest in D & H Railway. A list and brief description of each of the contracts (the "prepetition contracts") is attached hereto as Appendix I.

On June 20, 1988, the D & H Railway filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. On June 27, 1988, the bankruptcy court appointed Francis P. Dicello to serve as Trustee of D & H Railway's bankruptcy estate. On January 24, 1990, D & H Railway and New York entered into another contract, No. D005356, for capital improvements with terms similar to those of the prepetition contracts. *See* bankruptcy court's January 15, 1991 order, Record on Appeal Item ("R.A.I.") F at 4. (No copy of contract D005356 appears in the record.)

On June 8, 1990, the bankruptcy court entered an order approving the sale of substantially all of the assets of D & H Railway to DH Corporation ("DHC"), a subsidiary of Canadian Pacific Ltd., which order was affirmed by opinion of the district court dated January 14, 1991, 124 B.R. 169. R.A.I. AA. The bankruptcy court's order included a finding that "New York is willing to waive any cash payments from the sale as to the claims of the nongovernmental creditors for CP's undertaking a continuation and maintenance of service," which finding was reiterated by the district court. *Id.* at 177. The Asset Purchase Agreement ("APA") was contingent upon, inter alia, New York's consent to the transfer and assignment to DHC of all D & H Railway's ownership and operating rights over property to which New York claims title, and the Trustee securing the bankruptcy court's authorization to assume the prepetition contracts and assign them to DHC. D.I. 12 at A–35.[2]

2. Although a complete copy of the APA was not designated as part of the record on appeal, New York appended an excerpt from it to its reply brief. D.I. 18. Although New York's augmentation of the record by appendix contravenes the provisions of Bankruptcy Rule 8006, the Court may, by authority of Bankruptcy Rule 8019, waive the requirements of certain bankruptcy appellate rules in the interest of expediency. *In re Beck–Rumbaugh Assoc., Inc.,* 80 B.R. 306, 307 (E.D.Pa.1987). Although the Court will on this occasion overlook New York's procedural short-

On December 26, 1990, the Trustee filed a motion to assume and assign the prepetition contracts and contract D005356. R.A.I. A. Attached to the motion was a Settlement Agreement in which New York agreed not to oppose the assumption and assignment of the contracts provided the Trustee paid certain of New York's claims against the estate as cure for defaults under the contracts. *Id.* The Settlement Agreement proposed that the Trustee, upon DHC's purchase of D & H Railway's assets, pay the following amounts into an escrow account: (1) $265,249.90 for scrap sales of rail from Oneonta Yard and scrap sales of locomotives and boxcar salvage; (2) $138,245 for post-petition rental of 38 boxcars from March 1, 1990 to July 31, 1990; and (3) $553,149 as recovery for double billings identified in an audit of the Adirondack Branch contract (D & H Railway apparently billed New York for materials which New York purchased directly and supplied to D & H Railway).

The Settlement Agreement also provided that the amount of $975,000 would be an allowed administrative claim, payable from general estate assets, and subordinated to all allowed administrative or priority expenses and the allowed secured claims of the private secured creditors. New York claims that D & H Railway used $975,000 it received from New York under a post-petition capital improvements agreement to fulfill maintenance and rehabilitation obligations extant under the prepetition contracts. Finally, New York did not waive its right to assert claims or the priority of claims for any diminution in the value of its title interest resulting from the new contract it planned to enter into with DHC with respect to continued maintenance and service obligations upon the sale of assets to DHC.

A hearing on the Trustee's motion for authority to assume and assign was scheduled for January 15, 1991, one day before DHC was to purchase D & H Railway's assets in the event the district court affirmed the bankruptcy court's order approving the sale. (The sale to DHC was coming, it may not be similarly tolerant in future bankruptcy appeals.

eventually consummated on January 18, 1991, two days later than originally scheduled. D.I. 18 at 4, n. 5.) The bankruptcy court authorized the assumption and assignment of the prepetition contracts and contract D005356, but changed the terms of the "cure," as set forth in the Settlement Agreement, in the following respects. The bankruptcy judge eliminated the amounts representing New York's scrap sales and boxcar rental claims because they did not arise in connection with defaults under the contracts but rather are amounts New York is entitled to under prior bankruptcy court orders. *See* Bankruptcy Court Orders dated February 22, 1989 and August 21, 1989, in R.A.I. X. The bankruptcy judge also subordinated New York's $975,000 claim to that of the United States (New York had only agreed to subordinate this claim to those of the private secured creditors). The bankruptcy court's order further provided that any interested party may dispute the "validity and amount" of the claims allowed under the order, and that the amount to which New York is entitled under the order will be netted out or offset against any amounts subsequently allowed or disallowed by the bankruptcy court with respect to these or any other claims New York asserts against the estate. R.A.I. F at 4.

Mellon filed its notice of appeal of the bankruptcy court's order on January 16, 1991. D.I. 1. The Trustee proceeded to assume and assign the contracts to DHC. Then, the contracts were canceled and subsumed into a new agreement between DHC and New York, which was executed on January 18, 1991. D.I. 8 at 4; D.I. 18 at 4 n. 5; Draft of New Agreement attached to R.A.I. C. Under the new agreement, DHC agreed to perform maintenance obligations for twelve years and the term of New York's title was reduced to ten years. Attachment to R.A.I. C at ¶ 2.03.

## PARTIES' CONTENTIONS

Mellon appeals the order authorizing assumption and assignment of the contracts on the following grounds: (1) the contracts

were not executory because New York had completed performance thereunder, and, thus, the Trustee could not assume and assign them under 11 U.S.C. § 365; (2) the bankruptcy court erred in permitting the Trustee to assume and assign the contracts because such assumption and assignment did not benefit the estate; (3) even if the bankruptcy court was correct in deciding that the contracts were executory and that their assumption and assignment benefited the estate, New York is judicially estopped from receiving cure payments because it repeatedly represented to the bankruptcy court that if the sale of D & H Railway's assets to DHC were finalized, New York would not require payment out of the sale proceeds in exchange for its agreement to accept performance of D & H Railway's maintenance obligations from DHC.

New York, as appellee, counters as follows: (1) the bankruptcy court correctly found that the contracts were executory because New York had a continuing obligation under the contracts to refrain from interfering with D & H Railway's use of the property to which New York holds title; (2) assumption of the contracts benefited the estate because it permitted the sale of D & H Railway's assets to DHC to go forward; (3) New York is not judicially estopped from receiving cure payments because it never intended to waive its right to receive any payments upon transfer of D & H Railway's assets to DHC; it merely represented to the bankruptcy court that, in the interest of completing the sale to DHC, New York would not seek the full amount to which it was entitled by virtue of its title interest in the transferred assets.

New York also moves to dismiss Mellon's appeal on the ground that because the sale of substantially all of D & H Railway's assets was contingent upon the bankruptcy court's authorization of the assumption and assignment of the contracts, and because the sale was consummated on those terms, Mellon's appeal is moot because Mellon failed to secure a stay of the order authorizing assumption and assignment and/or

the order authorizing the sale pending Mellon's appeal of the order authorizing assumption and assignment.[3] New York also contends that any appeal as to the amount of the cure payments the bankruptcy court awarded is interlocutory because the bankruptcy court's order, by its own terms, permits any interested party to contest the "validity and amount which have been allowed" pursuant to it.

However, New York appeals and cross-appeals the bankruptcy court's order with respect to the amounts awarded as cure payments in the event the Court considers the bankruptcy court's order final in that respect. Specifically, New York claims the bankruptcy court erred in disallowing some of the amounts the Trustee and New York agreed were cure payments, and in subordinating New York's $975,000 cure payment to the United States' claim in addition to those of the private secured creditors.

The Trustee as appellee essentially agrees with New York that Mellon's appeal is moot, that the bankruptcy court correctly found that the contracts are executory and could be assumed and assigned, but that the bankruptcy court erred in disturbing the Settlement Agreement between the Trustee and New York with respect to the amount of cure payments.

The United States as appellee agrees with Mellon that the bankruptcy court erred in finding that the contracts were executory, but takes the position that the bankruptcy court properly modified the Settlement Agreement between New York and the Trustee, and also argues that New York lacks standing to appeal a settlement to which it "consented" by failing to withdraw its agreement to the assumption and assignment of its contracts when the bankruptcy court modified the settlement.

## DISCUSSION

■ District courts have jurisdiction over appeals from final orders in bankruptcy cases and over appeals from interlocu-

---

**3.** DHC filed a motion for leave to file an *amicus curiae* brief on the issue of mootness and attached its brief and appendix thereto. D.I. 12.

The Court granted DHC's motion, over Mellon's objection (D.I. 15), by order dated May 23, 1991. D.I. 20.

tory orders with leave of court. 28 U.S.C. § 158(a) (1988). No party sought leave to appeal the bankruptcy court's January 15, 1991 order as an interlocutory order, but the Court may review an interlocutory order on its own motion if warranted. Bankr.R. 8003(c); *In re Gianakas,* 112 B.R. 737, 740 (W.D.Pa.), *aff'd,* 917 F.2d 759 (3d Cir.1990). The bankruptcy court's January 15, 1991 order addresses two related but discrete issues: (1) whether the contracts in question are executory and may be assumed and assigned by the Trustee; (2) what amount New York is entitled to as cure for defaults under the contracts. The order states that it is a final order, but expressly leaves the second issue open to further litigation among the parties. Despite the bankruptcy court's characterization of its order as a final order, this Court must make its own assessment of the nature of the order to determine whether or not appellate jurisdiction exists. *See In re West Electronics Inc.,* 852 F.2d 79, 81 (3d Cir.1988).

"In the bankruptcy context, finality is accorded a somewhat flexible, pragmatic definition." *In re Taylor,* 913 F.2d 102, 104 (3d Cir.1990). Generally, a final order is one which finally resolves a discrete set of issues, leaving no related issues for later determination. *Id.; West Electronics,* 852 F.2d at 82. The Third Circuit has specified a number of factors relevant to a determination of whether an order in a bankruptcy matter is final for purposes of appeal:

> "the [order's] impact on the assets of the bankruptcy estate, the necessity for further factfinding on remand, the preclusive effect of [an appellate] decision on the merits on further litigation, and whether the interest of judicial economy would be furthered."

*Century Glove, Inc. v. First American Bank,* 860 F.2d 94, 97 (3d Cir.1988) (quoting *In re Meyertech,* 831 F.2d 410, 414 (3d Cir.1987)). Even without delving into an analysis of each of the above-enumerated factors, it is apparent that the bankruptcy court's order is final in one respect but interlocutory in another: It conclusively determines that the contracts are executory and may be assumed and assigned by the Trustee, but expressly leaves the amount awarded to New York subject to adjustment if interested parties contest the validity and amount of the award. *See In re Allen,* 816 F.2d 325, 327, 328 (7th Cir.1987) (order voiding prepetition mortgage foreclosure sale and preliminarily approving deceleration of mortgage as part of debtor's plan of reorganization final as to whether sale void but not as to propriety of mortgage deceleration; latter ruling interlocutory until confirmation of reorganization plan); *In re Victoria Station Inc.,* 875 F.2d 1380, 1382 (9th Cir.1989) (order approving assumption and assignment of unexpired lease final order); *In re E.H. Mann, Inc.,* 118 B.R. 895, 897 (S.D.Ga. 1990) (bankruptcy court's determination that agreement between debtor and developer was financing transaction or sale, not lease subject to assumption or rejection under Bankruptcy Code, is final order for purposes of appeal, as "[t]here was no hint that the [bankruptcy] [c]ourt might revisit the issue, or that the issue was otherwise unresolved in any way"); *In re Charter Co.,* 778 F.2d 617, 621–22 (11th Cir.1985) (order not final when bankruptcy court expressly leaves issue open for revisitation).

The Court's characterization of the January 15, 1991 order as final with respect to the propriety of the Trustee's assumption and assignment of the contracts to DHC presents another obstacle to addressing the merits on appeal—mootness. As explained *supra* at pages 390–391, the sale of D & H Railway's assets to DHC was contingent upon the assumption and assignment of the contracts. On January 18, 1991, two days after Mellon filed its notice of appeal, the contracts were assumed and assigned, then subsumed into a new agreement between New York and DHC, and the sale of assets to DHC was completed. New York takes the position that because the assumption and assignment was so integrally related to the sale of assets, the Court cannot grant Mellon the relief it seeks without unraveling the sale, and the Court is now precluded from doing so because Mellon obtained neither a stay of the sale order, as required by § 363(m), pending its appeal of the assumption and as-

signment order nor a stay of the assumption and assignment order (which presumably would have held up the sale).

Mellon counters that because § 365 of the Bankruptcy Code regarding assumption and assignment of executory contracts (unlike § 363 regarding sale of assets) does not expressly require a stay pending appeal of an order authorizing assumption and assignment of executory contracts, Mellon's failure to secure a stay does not render the appeal moot.

Presented with a similar scenario, the First Circuit recently held that the appeal of an order authorizing the assumption and assignment of an unexpired lease, which assumption and assignment was a condition of an asset sale, was moot because no stay was obtained pursuant to § 363(m) and the sale was completed. *In re Stadium Management Corp.*, 895 F.2d 845 (1st Cir. 1990). There, as here, the sale was contingent upon the bankruptcy court's approval of certain motions, including the trustee's motion to assume and assign the unexpired lease. Mellon argues that this case is controlled by *In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1085 (3d Cir.1990), in which the Third Circuit refused to read the Bankruptcy Code as requiring a stay pending appeal of an aspect of a § 365 order authorizing assumption and assignment of a lease. However, although *Slocum* rejects the Stadium Management approach of stretching § 363(m) to moot an appeal of an assumption and assignment under § 365, *Slocum* indicates that general mootness principles may apply to moot the appeal of a § 365 order.

In *Slocum*, a shopping center landlord, George Denney, leased space to Joshua Slocum Ltd., a retailer. The lease, signed in 1983, contained an average sales clause, paragraph 20, which provided that either party could terminate the lease if, after six years, Slocum's average yearly sales were below a certain amount. Slocum filed a Chapter 11 petition in 1988, and shortly thereafter the trustee petitioned the bankruptcy court for authority to assume and assign the lease pursuant to 11 U.S.C. § 365, which application Denney opposed.

On April 11, 1989, the bankruptcy court entered an order authorizing the assumption and assignment of Slocum's lease to another retailer, European Collections, Inc., and holding unenforceable paragraph 20 of the lease. European Collections began occupancy of the space, and Denney appealed the bankruptcy court's order to the district court. The trustee filed a motion to dismiss Denney's appeal as moot, but on December 21, 1989, the district court denied the trustee's motion to dismiss and affirmed the bankruptcy court's order without opinion. Denney subsequently appealed to the Third Circuit. *Id.* at 1083–84.

The trustee argued before the Third Circuit that Denney's appeal was moot because he failed to obtain a stay pending appeal and European Collections had begun occupancy under the lease. *Id.* at 1085. The majority rejected the trustee's argument, but Judge Sloviter, writing in dissent, considered the appeal moot because holding otherwise required the court to "overturn[ ] a transaction that ha[d] long since been consummated involving a non-party, good-faith purchaser." *Id.* at 1093. Judge Sloviter concurred in the majority's conclusion that § 363(m) does not apply to moot an appeal of a § 365 order absent a stay of such order, citing Stadium Management as a case which had, in her view, mistakenly interpreted § 363 in such a manner. *Id.* Nevertheless, she opined that the appeal of the now-consummated assumption and assignment was moot under general mootness principles.

As Judge Sloviter noted, the Third Circuit recognizes that in bankruptcy cases, "in addition to those situations covered under 11 U.S.C. § 363(m) and § 364(e),[4] a myriad of circumstances can occur that would necessitate the grant of a stay pending appeal in order to preserve a party's position." *In re Highway Truck Drivers & Helpers Local Union # 107*, 888 F.2d 293, 298 (3d Cir.1989). *See also In re Holywell Corp.*, 901 F.2d 931, 933 (11th Cir.1990) (debtors' appeal of order fixing amount of interest due creditor mooted by

---

**4.** Section 364(e) requires a stay pending appeal of an order authorizing a trustee to obtain unse-

cured credit or incur unsecured debt to operate the business of the debtor.

subsequent confirmation of reorganization plan which provided for creditor's purchase of debtor's property and consummation of purchase, as reorganization plan was adopted under assumption that creditor could rely on amount of interest bankruptcy court considered correct); *In re Quality Spice Corp.*, 107 B.R. 843 (D.N.J.1989), *aff'd mem.*, 908 F.2d 961 (3d Cir.1990) (appeal of order authorizing complex settlement agreement, the terms of which had largely been carried out, is moot).

Bankruptcy Rule 8005 provides that a party may, although it need not, apply to the bankruptcy court or the district court for a stay pending appeal. *See Highway Truck Drivers*, 888 F.2d at 297. Failure to obtain a stay, however, "places the appellant in jeopardy as the 'prevailing party may treat the judgment or order of the bankruptcy judge as final, notwithstanding that an appeal is pending.'" *In re T & H Diner, Inc.*, 108 B.R. 448, 451 (D.N.J.1989) (quoting 9 Collier on Bankruptcy ¶ 8005.03 (1989)). *See also Slocum*, 922 F.2d at 1095; *Highway Truck Drivers*, 888 F.2d at 297–98. "If events transpire during the pendency of the appeal which prevent the appellate court from granting effective relief, the appeal will be dismissed as moot." *T & H Diner*, 108 B.R. at 451. *See also Slocum*, 922 F.2d at 1085; *In re Cantwell*, 639 F.2d 1050, 1054 (3d Cir.1981).

The *Slocum* majority acknowledged that it would likely agree with Judge Sloviter's general mootness analysis if the issue before it were the assignment of the lease, *id.* at 1086 n. 2, but the majority understood its inquiry to be limited to "whether the bankruptcy court ha[d] the authority to excise paragraph 20 of the lease." *Id.* at 1085, 1086 n. 2. Judge Sloviter predicted that the majority's restoration of paragraph 20 to the lease would "undeniably have the effect of fundamentally changing the terms of the assignment ... thereby effectively rescinding it," and thus she considered the appeal moot. *Slocum*, 922 F.2d

at 1094. The majority disagreed with Judge Sloviter that reversal of the bankruptcy court's ruling regarding paragraph 20 would effectively rescind the lease because the record contained insufficient factual findings to support that conclusion. *Id.* at 1086 n. 2.

Thus, *Slocum* suggests, although it does not expressly hold, that where, as here, a party appeals an assumption and assignment, consummation of the assignment moots the appeal in the absence of a stay. The majority in *Slocum* did not so hold because it viewed the issue before it narrowly and doubted that reversal on that issue would affect the assignment. In this case, Mellon's appeal seeks reversal of the assumption and assignment,[5] which not only places it beyond the narrow holding of *Slocum*, but, if granted, will affect the terms of a § 363 sale of assets, which sale the bankruptcy court found was contingent on the assumption and assignment. R.A.I. F at 2–3.

Although *Slocum* does not permit the Court to consider Mellon's appeal moot by virtue of § 363(m), the "well-established rules of justiciability" and "the particular need for finality in bankruptcy" invoked by Judge Sloviter lead the Court to conclude that Mellon's appeal with respect to the propriety of the assumption and assignment is moot. The Court cannot grant Mellon the relief it seeks without disturbing several related transactions which have "long since been consummated." *Slocum*, 922 F.2d at 1093. Pursuant to the bankruptcy court's January 15, 1991 order, the Trustee assumed the D & H Railway–New York contracts and assigned them to DHC. New York and DHC then entered into an agreement consolidating and modifying their respective obligations under the contracts. With the contingency in the Asset Purchase Agreement requiring the assumption and assignment of the contracts satisfied, the Trustee and DHC proceeded to consummate the sale of assets. The Court cannot now demolish the foundation of the house of cards which represents the continued operation of the railroad.

---

**5.** Mellon claims that its attack is limited to the propriety of the assumption and attendant cure payments and that it does not challenge the assignment of the contracts to DHC. D.I. 14 at

**13, 15.** However, under § 365(f)(2) assumption necessarily precedes assignment, so if the Trustee improperly assumed the contracts, he was without authority to assign them.

Mellon also appeals, and New York appeals and cross-appeals, that portion of the bankruptcy court's order awarding New York specified amounts as cure for defaults under the contracts. Mellon argues that even if the bankruptcy court was correct in authorizing the assumption and assignment, New York, though it may be entitled to cure payments, is judicially estopped from receiving same because it repeatedly represented to the bankruptcy court that if the sale of D & H Railway's assets to DHC were finalized, New York would not seek cure payments out of sale proceeds. New York's appeal and cross-appeal seek reversal of the bankruptcy court order insofar as it modified the terms of the Settlement Agreement between the Trustee and New York by subordinating New York's $975,000 claim to the United States' claim and eliminating certain amounts from the cure payment.

As stated *supra* at page 393, the bankruptcy court's ruling as to the amount of cure is, by its own terms, preliminary in nature. The bankruptcy judge recognized that the record before her was inadequate to finally fix the amount New York should receive as cure for defaults under the contracts. R.A.I. E at 100. Although New York agrees to defer its challenges to the amounts awarded under the order if the Court considers its appeal and cross-appeal interlocutory, D.I. 8 at 6, Mellon has not made a similar concession. However, the Court will not go on to consider whether it should address the merits of Mellon's inter-locutory appeal despite Mellon's failure to seek leave of court to appeal from an interlocutory order, because it is the bankruptcy court which should decide in the first instance whether New York is judicially estopped from receiving cure payments. The January 15, 1991 order contains no express finding regarding the judicial estoppel issue, and counsel for Mellon conceded at oral argument before this Court that Mellon failed to fully present the facts relevant to judicial estoppel to the bankruptcy judge. D.I. 24 at 41. *See In re Neis*, 723 F.2d 584, 589–90 (7th Cir.1983) (district court should not ordinarily engage in additional factfinding on appellate review of bankruptcy court order). Because the January 15, 1991 order contemplates a further bankruptcy court hearing regarding the amount to which New York is entitled as a result of the assumption and assignment of its contracts with D & H Railway, Mellon has an opportunity to put the judicial estoppel issue squarely before the bankruptcy court.

## CONCLUSION

For the foregoing reasons, the Court will dismiss Mellon's appeal of the bankruptcy court's January 15, 1991 order authorizing the Trustee to assume and assign executory contracts as moot, will dismiss Mellon's appeal with respect to the amounts awarded under the order as interlocutory, and will dismiss New York's appeal and cross-appeal regarding the amounts awarded under the order as interlocutory. An appropriate order follows.

## APPENDIX I
### Prepetition Contracts Assumed by Trustee
### Per Bankruptcy Court's January 15, 1991 Order

| | Contract Number | Date Executed | DESCRIPTION | TERM OF MAINTENANCE/TITLE |
|---|---|---|---|---|
| 1. | D94102 | 10/1/78 | Track & Tie Program: purchase/install rails, ties; purchase equipment to perform installation (amends agreements executed 10/30/75 and 10/19/76) | 30 years—track<br>10 years—equipment<br>Requires reconveyance of title from state to railroad at end of term |
| 2. | D94415 | 10/17/78 | Track Improvements: Susquehanna, Saratoga and Champlain Divisions (amends agreement executed 10/11/76) | Same as above |
| 3. | D94578 | 3/8/77 | Rehabilitate 30 Freight Locomotives | 20 year maintenance obligation<br>No provision regarding title |

| Contract Number | Date Executed | DESCRIPTION | TERM OF MAINTENANCE/TITLE |
|---|---|---|---|
| 4. D94578 (supplemented) | 11/17/78 | Oneonta Yard Rehabilitation | 30 years—track State retains title for term; silent as to how title passes to railroad at end of term |
| 5. D94578 (supplemented) | 10/4/79 | Adirondack Branch Rehabilitation | Same as above |
| 6. D94578 (supplemented) | 5/27/82 | Adirondack Branch Rehabilitation | Same as above |
| 7. D94578 (supplemented) | 9/25/87 | Adirondack Branch Rehabilitation | Same as above |
| 8. D94729 | 6/16/77 | Track & Tie Program | 30 years—track Requires reconveyance of title from state to railroad at end of term |
| 9. D94801 | 8/10/77 | Signal & Communications Program | 30 years—materials and equipment Requires reconveyance of title from state to railroad at end of term |
| 10. D000226 | 5/12/83 | JX Yard Rehabilitation | 20 years Title vests in railroad at end of term |
| 11. D000367 | 12/29/83 | Susquehanna Division Rehabilitation; Construction of Locomotive Repair Facility at E. Binghamton, NY; JX Yard Rehabilitation; North End Main Line Rehabilitation | 30 year maintenance obligation Title 10, 15 or 30 years depending on materials' useful life Title vests "automatically" in railroad at end of useful life |
| 12. D000467 | 7/6/84 | JX Yard Trackwork Completion | 10 year maintenance obligation Title for "useful life," not to exceed 20 years Title vests in railroad at end of term |
| 13. D550008 | 7/31/84 | Final Design Place of Belden Tunnel | Not applicable |
| 14. D550150 | 6/17/85 | Belden Tunnel Reconstruction | 30 years Title vests "automatically" in railroad at end of term |